[No. B108485. Second Dist., Div. Two. Nov. 7, 1997.]

THE PEOPLE, Plaintiff and Appellant, v.
DAVID GOHDES, Defendant and Respondent.

**COUNSEL**

Gil Garcetti, District Attorney, Diana L. Summerhayes, Brent Riggs and Fred Klink, Deputy District Attorneys, for Plaintiff and Appellant.

Alvin S. Michaelson, Janet I. Levine and Leonard B. Levine for Defendant and Respondent.

**OPINION**

**ZEBROWSKI, J.**—Defendant David Gohdes was charged with the crime of "continuous sexual abuse of a child" in violation of Penal Code section 288.5 (section 288.5). Defendant filed a motion to set aside the charge pursuant to Penal Code section 995 on the grounds that the evidence was insufficient to prove a necessary element of the claimed offense. The trial court granted the motion and dismissed the charge. The People appeal.

Section 288.5 provides that: "(a) Any person who either resides in the same home with the minor child *or has recurring access to the child*, who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual contact with a child under the age of 14 years at the time of the commission of the offense, . . . or three or more acts of lewd or lascivious conduct under Section 288, with a child under the age of 14 years at the time of the commission of the offense is guilty of the offense of continuous sexual abuse of a child . . . ." (Italics added.)

The issue in this case is whether sufficient evidence was presented at the preliminary hearing on the section 288.5 charge to support the "recurring access to the child" element of the offense. We agree with the trial court that the facts the People set forth at the Penal Code section 995 hearing do not amount to "recurring access" within the meaning of the statute and that the charge was therefore properly dismissed. We shall therefore affirm.

### PROCEDURAL HISTORY AND STATEMENT OF FACTS

The preliminary hearing was held in July 1996. Corrine S., who was 18 years old at the time of the hearing, was the only witness. The evidence showed the following:

Corinne was about eight years old when she first met defendant, who was then seeing her older sister. Defendant dated the older sister for about four years. By the time Corrine was 11 or 12, her older sister had run away and was therefore no longer living in the family home. Corrine lived in a room behind a garage, the room in which her older sister formerly lived, while her parents lived in the house upstairs. In the summer of 1991, when Corrine was 12 years old, defendant came to her window late at night. Corrine was initially frightened, but calmed when she realized it was defendant. Defendant did not come into the room on this occasion but instead talked to her from outside the window while standing on some logs. After Corinne and defendant talked for about an hour, Corinne opened the window. Defendant and Corinne then kissed, and he left.

Within six months, defendant returned. Corrine was then 12 or 13 years old and in eighth grade. Defendant arrived at her window about 2 or 3 a.m. On this occasion, he climbed in the window and they talked for a long time. He then returned on other occasions. On either the second, third, or fourth occasion, defendant and Corinne began engaging in fondling and other sexual conduct short of intercourse. Defendant continued to come to Corinne's room at nighttime, probably 10 to 15 times, and maybe more, and the sexual activity continued. Sometimes she would not see him for a week and sometimes she would not see him for months at a time. Corinne testified that defendant generally came about once a month.[1] He never threatened her, and she was initially flattered by his attention.

In 1992 the family moved to a different home where somebody standing at Corrine's bedroom window would be visible from the street. Defendant nevertheless came to that house as well, probably 10 or more times.[2] The sexual conduct continued. Corrine was 14 the last time defendant came to her room, which was in February 1993. This final time was the only time Corinne and defendant had intercourse. Corinne believed that defendant was 24 years old at this time. The intercourse was "partly [her] idea." Prior to the intercourse, defendant said, "I thought we were going to wait until you were 18 to do this." This occasion was the only time Corinne saw defendant naked. Defendant's visits were infrequent after this occasion.

Corinne's parents did not know that defendant was coming to her room. He never had a key to the house, and he had no right to be in her house. He

---

[1] At one point Corinne kept a journal and noted some of the occasions, but she burned that journal. She also burned written statements she had written for AA meetings. Although she had shown these to her AA sponsor, she burned them before complaining to the police or telling her mother about defendant.

[2] He ceased coming into her room after an alarm system was installed.

never lived with her and from 1991 to 1993 was never invited to her house. Defendant was not her teacher, counselor, adviser, or family member. He had previously been her sister's boyfriend, but was not during the time in question. Corrine was using drugs during this period. She smoked marijuana, drank alcohol, and consumed hallucinogens. She began using cocaine about a year later.

At the preliminary hearing, defendant moved to dismiss the section 288.5 charge for insufficient evidence. Defendant argued that the evidence could not support a finding of "recurring access." In granting the motion, the magistrate observed: "288.5 was enacted for specifically the residential child molester or an individual who enjoys a specific position of trust in the family and, therefore, has unlimited access to the child. I do not find that to be the case here. [¶] He was not an invited guest in the home. He was not an uncle who came at holidays. He was none of the things that I believe 288.5 does specifically direct its attention to; however, I do believe it would be a violation of 288(a), and I would allow you to amend to conform with proof at this time."

The People then moved to amend to allege other felony charges against defendant.[3] The court then considered additional authorities on the section 288.5 question regarding "recurring access," but stood by its initial ruling, stating: "I do not believe that the defendant enjoyed a position of trust at the time of the incident. [¶] If the molestations had occurred when the defendant was dating the victim's older sister, then I believe that would be a different situation, but the molestations occurred after the older sister and the defendant ceased their relationship. And based on the facts that were presented, even more so after the relationship was broken off, I do not believe that the defendant enjoyed any position of trust whatsoever with the family. He was no longer an invited guest into the home, and he no longer enjoyed a relationship with the family at that time."

"As a matter of fact, the evidence did show that, in fact, there were a lot of bad feelings about the defendant after the breakup with the victim's older sister. [¶] With regard to recurring access, I have researched the issue, and I do not believe that the legislative intent of Penal Code section 288.5 is this situation. I believe that the intent of the statute is when the molester has access to the child for a legitimate purpose, for baby-sitting, a family friend, even a worker in the home, and abuses the child during the otherwise legitimate visit.

"Here the defendant sneaked in at night, took great care to wake no one and left before being discovered. I do not believe that availability to the

---

[3]Other charges remain pending against defendant, but only the section 288.5 charges are implicated on this appeal.

victim due to the placement of her room in the household is tantamount to recurring access. And I think she was available because she was isolated in a certain portion of the garage of the house. She was certainly available because of that seclusion, but I do not believe that that is tantamount to recurring access under any circumstances."

The People then amended to allege other charges, and the magistrate held defendant to answer. The People thereafter refiled an information charging a section 288.5 violation in addition to other charges. Defendant was arraigned on these charges. Defendant again moved to dismiss the section 288.5 charge based on the lack of recurring access. Noting this was a "novel issue" and one of first impression, the trial court stated its reasoning in granting the motion: "I don't think there is any question, but that if the conduct is to be believed, that the conduct is illegal under some other statute. I don't believe it falls within the purview of this particular statute per se. I think you have to read the phrase 'recurring access' within the context of the statutory language and its intent. And I think when you do that, you can conclude that this conduct here does not fall within the umbrella of this particular statute."

## Issue on Appeal

The key issue on appeal is whether the evidence in this case would support a finding of "recurring access" within the meaning of section 288.5.

## Discussion

*The trial court did not err in dismissing the section 288.5 charge.*

Section 288.5 provides: "(a) Any person who either resides in the same home with the minor child *or has recurring access to the child,* who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual contact with a child under the age of 14 years at the time of the commission of the offense, . . . or three or more acts of lewd or lascivious conduct under Section 288, with a child under the age of 14 years at the time of the commission of the offense is guilty of the offense of continuous sexual abuse of a child and shall be punished by imprisonment in the state prison for a term of 6, 12, or 16 years." (Italics added.)

The question is the Legislature's intent in applying the statute only to a defendant who "either resides in the same home with the minor child *or has recurring access to the child* . . . ." (§ 288.5, italics added.) "The fundamental purpose of statutory construction is to ascertain the

intent of the lawmakers so as to effectuate the purpose of the law." (*People v. Pieters* (1991) 52 Cal.3d 894, 898 [276 Cal.Rptr. 918, 802 P.2d 420]; *Hogya v. Superior Court* (1977) 75 Cal.App.3d 122, 132 [142 Cal.Rtpr. 325].) "The provisions of the Penal Code are to be construed 'according to the fair import of their terms, with a view to effect its objects and to promote justice.' (Pen. Code, § 4.) Nonetheless, the court cannot create an offense by enlarging a statute, by inserting or deleting words, or by giving the terms used false or unusual meanings. (*People v. Baker* (1968) 69 Cal.2d 44, 50 . . . .) The court must give effect to statutes according to the usual, ordinary import of the language employed in framing them. When statutory language is clear and unambiguous, there is no need for construction, and courts should not indulge in it. (*People v. Belleci* (1979) 24 Cal.3d 879, 884 . . . .)[4] [¶] If, however, the court perceives an ambiguity in the statute, it is well settled that the court must construe that ambiguity in favor of the defendant. When language reasonably susceptible of two constructions is used in penal law, ordinarily that construction more favorable to the defendant will be adopted. The defendant is entitled to the benefit of every reasonable doubt as to the true interpretation of words or the construction of language used in a statute. (*In re Jeanice D.* (1980) 28 Cal.3d 210, 217 [168 Cal.Rptr. 455, 617 P.2d 1087].)" (*People v. Stepney* (1981) 120 Cal.App.3d 1016, 1019 [175 Cal.Rptr. 102].)[5]

The parties agree that section 288.5 was enacted in reaction to *People v. Van Hoek* (1988) 200 Cal.App.3d 811 [246 Cal.Rptr. 352], where

---

[4]"But such language " 'should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.' . . . Thus, '[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.' . . . Finally, we do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' " (*People v. Pieters, supra,* 52 Cal.3d 894, 898-899.) Moreover, to the "extent that uncertainty remains in interpreting statutory language, 'consideration should be given to the consequences that will flow from a particular interpretation' . . . ." (*People v. Cruz* (1996) 13 Cal.4th 764, 782 [55 Cal.Rptr.2d 117, 919 P.2d 731]. "We will not parse each literal phrase of a statute if doing so contravenes the obvious underlying intent, or leads to absurd or anomalous results." (*People v. Martinez* (1995) 11 Cal.4th 434, 448 [45 Cal.Rptr.2d 905, 903 P.2d 1037]; see *People v. Adames* (1997) 54 Cal.App.4th 198, 212 [62 Cal.Rptr.2d 631].)

[5]Thus, contrary to the People's contention in their opening brief, the doctrine of lenity in construing penal statutes is applicable in California, at least where the statute is ambiguous. "[I]t is an established rule of construction that ambiguities in penal statutes are to be construed most favorably to the accused." (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1011 [239 Cal.Rptr. 656, 741 P.2d 154]; *People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 312 [58 Cal.Rptr.2d 855, 926 P.2d 1042]; *People v. Simon* (1995) 9 Cal.4th 493, 517 [37 Cal.Rptr.2d 278, 886 P.2d 1271]; *People v. Kalnoki* (1992) 7 Cal.App.4th Supp. 8 [9 Cal.Rptr.2d 827]; *People v. Fenton* (1993) 20 Cal.App.4th 965, 968 [25 Cal.Rptr.2d 52].)

a child's inability to discern specific times of incidents of continuous abuse led to a reversal of her father's conviction of various sexual abuse charges. The court referred to the "perplexing questions" posed by prosecution of the "resident child molester," a term it applied "to a person who either resides in the same home with the minor or has unchecked access to the child and repeatedly sexually molests the child over the prolonged period of time." (200 Cal.App.3d 811, 814, fn. 1.) The statute uses the term "recurring access" rather than "unchecked access."

As Justice Werdegar observed in *People* v. *Avina* (1993) 14 Cal.App.4th 1303, 1308 [18 Cal.Rptr.2d 511], "Section 288.5 was enacted in 1989 in order to remedy some of the problems of pleading, proof and jury instruction that had arisen in the prosecution of 'resident child molesters' under section 288. (See *People* v. *Jones* (1990) 51 Cal.3d 294, 328-330 [270 Cal.Rptr. 611, 792 P.2d 643] (dis. opn. of Mosk, J.); *People* v. *Superior Court (Caudle)* (1990) 221 Cal.App.3d 1190, 1195 . . . .) It provides a severe penalty (6, 12 or 16 years in prison) for anyone who, while residing with or having recurring access to a child under the age of 14, engages, over 3 months or longer, in 3 or more acts of substantial sexual conduct, as defined in section 1203.066, subdivision (b), or lewd acts under section 288. (§ 288.5, subd. (a).) Only one count of section 288.5 may be charged for each victim, and no other felony sex offense may be charged involving the same victim and occurring within the charged time period. (§ 288.5, subd. (c).)"

The legislative materials presented by the People only inferentially address the parameters of "recurring access." An internal memorandum from the Office of the Attorney General addresses questions likely to be raised during the legislative process. One was, "Why is the bill not limited just to persons who reside with the minor?" The response: "Because the problem of the 'resident child molester' as identified in the cases, includes persons who have recurring or unchecked access to the minor not just those who reside with the minor. [Citation.] For example, in *People* v. *Jeff* (1988) 204 Cal.App.3d 726 [250 Cal.Rptr. 878], [*sic* (*People* v. *Luna*)] where the convictions were affirmed over a strong dissent that cited *Van Hoek* and *Atkins* . . . , the defendant was an uncle who babysat the victim in the victim's home. This broader coverage sensibly covers ex-spouses, non-live-in-lovers, relatives or any other person who does not reside with the minor but who has recurring access to the minor."

The California Teachers Association opposed the bill because of the bill's inclusion of "recurring access." Its opposition noted that "By definition,

school teachers have 'recurring access' to students placed within their charge. Therefore they are within the sweep of the newly proposed Penal Code 288.5 to be added by this bill."

A letter from Assembly Majority Whip Jacqueline Speier to the Governor stated, "The gravamen of the new crime would be the repeated sexual abuse of a child over a prolonged period of time by a person with recurring access to the child. This will usually be a parent or stepparent."

Nothing in the words of the statute or the legislative materials suggests that defendant here had "recurring access" to the child within the intent of the Legislature. There are certain obvious situations which are clearly within the meaning of the term "recurring access" as intended by the Legislature. These situations—babysitters, regularly visiting relatives or friends, etc.— are clearly stated in the legislative history. In the instant case, the defendant purportedly having "recurring access" was simply an acquaintance of the minor, who had earlier become known to the minor when he was dating the minor's older sister. His illicit relationship with the minor began long after his relationship with the older sister had ended.

The rationale behind section 288.5 is also clearly discernible from the legislative and case law history. When a minor is subjected to repeated acts of sexual molestation over an extended period, that minor's memory of events can tend to blur and the minor can have difficulty remembering and testifying to specific events in sufficient detail to support a conviction. To remedy that problem, the Legislature created the new crime set forth in section 288.5: "continuous sexual abuse of a child." This new crime lightens the prosecution's burden by dispensing with the need to prove specific events. It correspondingly adds to the difficulties of defense. The new crime has limitations, however. One such limitation is the "recurring access" limitation. A few key points concerning the meaning of this limitation can be discerned by studying the language of the statute itself.

First, "recurring access" is an independent element of the crime. In addition to the time element, the act element, the age-of-child element, etc., the element of "recurring access" must be proven to support a conviction.

Second, other elements of a section 288.5 violation are that the defendant engage "in three or more acts of substantial sexual contact" with the child over a period "not less than three months in duration." This three-acts-over-not-less-than-three-months requirement must also be proven to support a

conviction. Since statutes cannot properly be read to contain redundancies, it follows that the "recurring access" element cannot be satisfied merely by proof of three acts over three months. A construction that proof of three acts over three months is sufficient to show "recurring access" would render the recurring-access element redundant. Thus, "recurring access" must mean something more than a sufficient level of access to the child to provide opportunity for the three-acts-over-not-less-than-three-months requirement.

Third, a defendant may be charged with only one violation of section 288.5 per child victim. (§ 288.5, subd. (c).) Thus, within the time period chosen by the prosecution for the section 288.5 charge, all forbidden acts make up only one section 288.5 violation. While at least three acts are necessary to prove a section 288.5 violation, many could be included within the time period and still only one section 288.5 violation will be supported. (*People* v. *Avina*, *supra*, 14 Cal.App.4th 1303, 1308.) The minimum three or more acts are required before the prosecution can invoke the burden-reducing provisions of section 288.5. In light of this statutory structure, construction of the "recurring access" element in quantitative as opposed to qualitative terms seems unlikely to be the one intended. Moreover, the Legislature clearly showed that it knew how to use quantitative terms when they were intended, e.g., three acts, three months.

The considerations noted above lead to the conclusion that the Legislature must have intended a qualitative rather than a quantitative construction of the "recurring access" element. This is the only type of construction suggested in the legislative history: uncles, babysitters, ex-spouses, non-live-in lovers, etc. There are two common characteristics of these categories. One is that in most categories suggested, the person with recurring access to the child also is in a position of authority over the child, or is in a position to command respect or obedience from the child. A second is that in each of these categories, there was an ongoing relationship between the person with recurring access and the child separate and apart from the relationship formed and characterized by the forbidden sexual activity. Even apart from the sexual activity, the uncle was still the uncle; the father, the father; the babysitter, the babysitter; the mother's boyfriend, the mother's boyfriend, and so forth. There is no analogous independent relationship in the instant case. Like the magistrate and the superior court, we conclude that the surreptitious assignations involved in this case do not meet the statutory requirement of "recurring access." This is simply not the type of relationship to which the statute as written is meant to apply.

## DISPOSITION

The order dismissing count one (Pen. Code, § 288.5) is affirmed. The case is to continue on the other charges pending.

Fukuto, Acting P. J., and Nott, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 25, 1998.