Opinion
 

 WOODS, J.
 

 Appellants were convicted of conspiracy to manufacture, distribute, sell and/or advertise cable television signal decoder boxes without the authorization of a franchised or licensed cable television system in
 
 *1388
 
 violation of Penal Code section 593d, former subdivision (b).
 
 [1]
 
 On appeal appellants challenge the constitutionality of section 593d, former subdivision (b), arguing it is vague and contravenes federal law. They also attack the sufficiency of the evidence supporting their convictions. Appellants further contend that their convictions are invalid because they were charged after the statute of limitations had expired. As set forth below, we conclude section 593d, former subdivision (b) is clear on its face and at the time relevant to this case was consistent with the federal laws governing the cable television industry. In addition, we find that sufficient evidence supported appellants’ convictions and that appellants were charged within the appropriate three-year statute of limitations for conspiracy. Accordingly, we affirm.
 

 Factual and Procedural History
 

 This case concerns the manufacture and sale of equipment used to receive cable television signals. Our analysis, therefore, begins with a brief overview of the equipment and technology involved in the reception of cable transmissions.
 

 Cable Television Technology and Equipment.
 

 Cable television signals are transmitted through cable wiring from the cable television system provider’s transmission center to its customer’s televisions. Cable services offered include basic cable programming (for example, network television channels such as ABC, CBS and NBC), premium programming (movie channels such as HBO) and “Pay Per View.” Cable television system providers “scramble” the signals of all channels other than those for the basic service levels. Basic service is provided for a set monthly fee, premium channels are available for additional monthly fees, and Pay Per View is sold by event.
 

 If a customer’s television is not cable-ready, a “converter box” (also known as a “plain Jane”) is needed to modify the electronic signals carried through the cable into a format displayed as multiple television channels. Such a device will not descramble any scrambled signals. The converter will only unscramble signals of basic service. If a customer desires access to premium channels or Pay Per View, a “decoder” is necessary in addition to the converter. A converter/decoder provided is “addressable” (also known as a “closed box”), which means it can be remotely programmed by the cable television system provider to descramble specific premium channels or Pay Per View events the customer has ordered; without a converter/decoder the
 
 *1389
 
 customer cannot view such programming. Scrambling the signals of the premium channels and Pay Per View and descrambling them with a converter/decoder (also referred to as a “descrambler”) is the technology used by cable television systems to assure that only those services actually paid for are received by their customers.
 

 Search and Seizure of Cable Equipment From Appellants’ Facilities.
 

 In October 1992, pursuant to a search warrant the police searched the offices, warehouses and manufacturing facilities of Gage Industries (Gage) and Cable Ready. The authorities seized equipment used in the reception of cable signals, including numerous converter/decoders, advertisements, purchase orders, sales invoices and receipts for cable converter/decoders as well as technical literature and manuals describing how to modify converters to descramble signals.
 

 Many of the converter/decoders seized from Gage and Cable Ready were of the type known as “wide open box” or “non-addressable” which means that they were made to descramble cable signals
 
 without
 
 the cable television system’s remotely programming the box to descramble the transmission. Equipment found at the warehouses could modify “plain Jane” converters as well as “closed box” converter/decoders into the “wide open box” decoder/ converters. Converter boxes found in the warehouses were in various stages of being modified into wide open boxes. Some of these converter/decoders contained a label warning the customer that the theft of cable services is illegal and advising the customer to obtain authorization from his or her cable television system provider prior to installing the converter/decoder.
 

 Among the documents seized was a booklet title the “Cable Hackers Bible” and other paperwork which listed numerous Southern California cable television system providers and the type of equipment used by each respective system. Each cable television system provider uses different equipment and different scrambled signals particular to its system. Therefore to customize a converter/decoder, Gage and Cable Ready would ascertain from each customer the identity, location and brand of converter used by that customer’s cable television system provider.
 

 Appellants’ Involvement in Gage and Cable Ready and Their Convictions.
 

 An organizational chart of Gage showed the company employed 32 individuals. Appellant William S. Prevost III (Prevost) was the owner and general manager of Gage. The organizational chart showed that appellant Rick Conn (Conn) was second in command and the office manager of Gage.
 
 *1390
 
 Appellant Donald Lee Weaver (Weaver) was listed as third in line on the organizational chart. He was also the president of Tore Industries. Cable Ready was the fictitious business name for Tore Industries.
 

 In November 1993 Prevost, Weaver and Conn were charged with, among other offenses,
 
 [2]
 
 one count of conspiracy to commit a crime, namely, a violation of section 593d, former subdivision (b).
 
 [3]
 

 At the preliminary hearing, the prosecutor presented evidence concerning the items seized by police as well as the role of each appellant in Gage and Cable Ready and their respective involvement in the manufacture and sale of cable converter/decoders. The prosecution also presented evidence that converter/decoders seized from Cable Ready and Gage were tested and found to descramble the scrambled cable signal of Continental Cable, a large Southern California cable television system. According to the evidence, Continental Cable never authorized Gage or Cable Ready or the individual appellants to manufacture and sell decoders/converters which could descramble Continental Cables’ scrambled signals. Likewise evidence was also presented that none of the local or federal public cable franchising entities had authorized Gage, Cable Ready or any of the appellants to sell or manufacture such decoders/converters.
 

 During the preliminary hearing, appellants argued that Gage’s landlord, American Diversified Properties, Inc. (ADP), a real estate development and property management company, gave Gage express authorization to manufacture and sell converter/decoders. ADP had purchased cable equipment
 
 *1391
 
 from Gage for a privately owned residential community developed by ADP which received television signals via a satellite antenna.
 

 In May 1996, appellants agreed to a bench trial based on the preliminary hearing transcript and exhibits as well as other documents in the record. The court found appellants guilty. Prevost was sentenced to five years’ probation and Conn and Weaver were respectively sentenced to three years’ probation. Appellants were also ordered to pay statutory restitution and restitution resulting from any subsequent civil judgment. Prevost, Conn and Weaver timely appeal their convictions.
 

 Discussion
 

 I.
 
 Issues on Appeal
 

 Appellants make the following contentions on appeal:
 

 1. Section 593d, former subdivision (b) requires specific intent to aid in or facilitate the theft of cable services, and there was insufficient evidence of specific intent to support the convictions.
 

 2. Section 593d, former subdivision (b), construed as a general intent statute, is unconstitutional because it is vague and violates both the supremacy and the commerce clauses of the United States Constitution.
 

 3. Appellants’ conspiracy convictions are not supported by sufficient evidence of: (1) their failure to obtain the required authorizations from a franchised or duly licensed cable system under section 593d, former subdivision (b); and (2) their agreement to violate section 593d, former subdivision (b.)
 

 4. Their convictions must be reversed because the statute of limitations for section 593d, former subdivision (b) had expired.
 

 II.
 
 Section 593d, Former Subdivision (b) Is a General Intent Statute Which Does Not Require Proof of Specific Intent to Facilitate or Aid in the Theft of Cable
 

 Appellants argue that section 593d, former subdivision (b) must be construed as a specific intent offense, which required proof that appellants intended to facilitate the theft of cable services by their cable converter/ decoder box customers. The plain language of section 593d, former subdivision (b) convinces us that appellants’ argument lacks merit.
 

 In construing statutes we must ascertain the intent of the Legislature to give full effect to the purpose of the law.
 
 (People
 
 v.
 
 Coronado
 
 (1995) 12
 
 *1392
 
 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232].) To discern legislative intent we first examine the words of the statute and apply their ordinary, commonsense meanings.
 
 (Lennane
 
 v.
 
 Franchise Tax Bd.
 
 (1994) 9 Cal.4th 263, 268 [36 Cal.Rptr.2d 563, 885 P.2d 976].) If the statute does not contain ambiguous language, “ ‘ “the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.” ’ ”
 
 (People
 
 v.
 
 Coronado, supra,
 
 12 Cal.4th at p. 151.) When the words are clear there is no room for interpretation and the courts should not indulge in it.
 
 (People
 
 v.
 
 Gohdes
 
 (1997) 58 Cal.App.4th 1520 [68 Cal.Rptr.2d 719].) A court will not “ ‘ “ ‘interpret away clear language in favor of an ambiguity that does not exist.’ . . .” ’ ”
 
 (People
 
 v.
 
 Coronado, supra,
 
 12 Cal.4th at p. 151.)
 

 With these principles in mind we turn to section 593d, former subdivision (b). In relevant part it provides: “Every person who, without the express authorization of a franchised or other duly licensed cable television system, knowingly and willfully manufactures, imports into this state, distributes, sells, offers to sell, possesses for sale, or advertises for sale any device, or any plan or kit for a device or for a printed circuit, designed in whole or in part to decode, descramble or otherwise make intelligible any encoded, scrambled or other nonstandard signal carried by that cable television system, is guilty of a misdemeanor . . ,
 

 This language is unambiguous. Section 593d, former subdivision (b) is a general intent offense. It only requires proof that a defendant knowingly and willfully manufactures, sells or advertises cable converter/decoders without the express authorization of the cable television system whose signal the converter/decoder descrambles. Nothing in the plain language of this statute requires proof that a defendant have the specific intent to facilitate the theft of cable.
 

 In addition, contrary to appellants’ contention, specific intent to aid in the theft of cable television signals need not be read into this statute to avoid absurd results.
 
 (People
 
 v.
 
 Pieters
 
 (1991) 52 Cal.3d 894, 898 [276 Cal.Rptr. 918, 802 P.2d 420] [“ ‘a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend’ ”].) Appellants hypothesize two “absurd” consequences which they believe would result from our reading of section 593d, former subdivision (b) as a general intent crime. First they argue that “one would have to conclude that the Legislature permitted subscribers to use a converter/ decoder to view lawfully purchased cable programming, but at the same time made it impossible for them to obtain the equipment.” Appellants’ claim is based on a faulty premise. Nothing in section 593d, former subdivision (b) “makes it impossible” for cable consumers to obtain cable equipment. Section 593d, former subdivision (b) does not prohibit the sale of cable converters/decoders to customers under all circumstances. It provides for
 
 *1393
 
 such sales so long as the seller obtains the proper authorizations from the appropriate cable television system. Such authorizations are necessary because they provide the cable television system with notice that its signals are being descrambled; absent such information the cable system would have no idea that its scrambled signals were being descrambled. Therefore, these authorizations allow the cable television systems to ensure that only those services actually paid for are received by their customers.
 
 [4]
 

 Second, appellants postulate that section 593d, former subdivision (b) as we interpret it outlaws any and all product research and development of cable converter/decoders. This, like the first hypothesis, is unsound. Research and development is clearly permitted, again, so long as it is authorized.
 

 Finally, we find that the plain language of section 593d, former subdivision (b) conforms with the overall purpose of this statute.
 
 (People
 
 v.
 
 Jenkins
 
 (1995) 10 Cal.4th 234, 246 [40 Cal.Rptr.2d 903, 893 P.2d 1224] [In determining legislative intent courts should “consider the statute read as a whole, harmonizing the various elements by considering each clause and section in the context of the overall statutory framework.”].) Section 593d, subdivision (a) prohibits the unauthorized receipt of cable transmission by the cable customer. Together, subdivision (a) and former subdivision (b) of section 593d achieve the Legislative intent to criminalize the unauthorized reception of cable services.
 

 For the foregoing reasons, we conclude that the plain language of section 593d, former subdivision (b) makes it a general intent statute for which no specific intent to facilitate the theft of cable signals need be proved.
 
 [5]
 

 III.
 
 Section 593d, Former Subdivision (b) Is Constitutional
 

 Appellants argue that section 593d, former subdivision (b) is unconstitutional if construed as a general intent statute, because it is vague and it violates the supremacy and commerce clauses of the United States Constitution. As set forth below, these arguments are erroneous.
 

 
 *1394
 
 A.
 
 Vagueness
 

 Appellants maintain that the provision in section 593d, former subdivision (b) which requires them to obtain “authorization from a franchised or duly licensed cable television system” is unconstitutionally vague so as to deprive them of their right to due process.
 

 Due process requires a “ ‘ “reasonable degree of certainty in legislation, especially in the criminal law.” ’ ”
 
 (People
 
 v.
 
 Kelly
 
 (1992) 1 Cal.4th 495, 533 [3 Cal.Rptr.2d 677, 822 P.2d 385].) Consequently, the “void for vagueness” doctrine dictates that the terms of a penal statute must be explicit enough to inform those who are subject to it what conduct on their part will render them liable to its penalties. A statute which requires individuals of ordinary intelligence to guess at its meaning and differ as to its application violates due process.
 
 (People
 
 v.
 
 Deskin
 
 (1992) 10 Cal.App.4th 1397, 1400 [13 Cal.Rptr.2d 391].) Nonetheless, a statute need not provide detailed plans and specifications of the acts or conduct prohibited. A criminal statute may use ordinary terms to express ideas which find adequate interpretation in common usage and understanding.
 
 {Ibid.)
 
 Reasonable certainty is not absolute certainty.
 

 In addition, more leeway is permitted in regulatory statutes even where criminal penalties are involved.
 
 (Papachristou
 
 v.
 
 City of Jacksonville
 
 (1972) 405 U.S. 156, 162 [92 S.Ct. 839, 843, 31 L.Ed.2d 110]; see, e.g.,
 
 United States
 
 v.
 
 National Dairy Corp.
 
 (1963) 372 U.S. 29 [83 S.Ct. 594, 9 L.Ed.2d 561].) “So long as the statute does not threaten to infringe on the exercise of First Amendment or other constitutional rights, however, such ambiguities, even if numerous, do not justify the invalidation of a statute on its face.”
 
 (Evangelatos
 
 v.
 
 Superior Court
 
 (1988) 44 Cal.3d 1188, 1201 [246 Cal.Rptr. 629, 753 P.2d 585].) To succeed on a facial vagueness challenge to a statute which does threaten a constitutionally protected right the challenger must do more than identify some instances in which the application of the statute may be uncertain or ambiguous; “he must demonstrate that ‘the law is impermissibly vague in all of its applications.’ ”
 
 (Ibid.)
 
 Appellants cannot satisfy this burden.
 

 Preliminary, we observe that section 593d, former subdivision (b) does not touch upon the exercise of constitutional rights, nor do appellants claim that it does. Section 593d, former subdivision (b) merely governs the manner in which certain entities conduct their business of making and selling cable converters and decoders. Nonetheless, appellants contend that the language concerning the required authorizations is so ambiguous that they can only speculate as to its meaning. They argue they must guess as to how
 
 *1395
 
 many “authorizations” are required. They further assert that the statute is impermissibly vague as to whether such authorizations must be express or whether they can be implied.
 

 We conclude that a person of ordinary intelligence would find the answers to these questions by reading the statute. The statute requires that appellants obtain the
 
 “express
 
 authorization of a franchised or duly licensed cable television system” to sell converter/decoders which descramble the cable television signal “carried by
 
 that
 
 cable television system.” (§ 593d, former subd. (b).) This language makes clear that appellants must obtain
 
 express
 
 permission from
 
 every
 
 cable television system whose cable signals their converter/decoder descrambles.
 

 In addition, we find no confusion as to the requirement that the authorization come from a “cable system.” Although section 593d, former subdivision (b) does not define the terms, they are defined under the Federal Cable Communications Act of 1984. (See 47 U.S.C. § 522(7).)
 
 [6]
 
 Moreover, by virtue of their business practices appellants learned what constituted a cable television system. To customize a decoder/converter which could descramble cable signals for a particular customer, appellants had to ascertain from that customer the location and the type of cable box used as well as the identity of that customer’s cable television system provider. In our view, this knowledge provided appellants with reasonable certainty concerning the entities from whom appellants had to seek authorization.
 

 B.
 
 Supremacy Clause
 

 Appellants claim that section 593d, former subdivision (b) is preempted by the Cable Communications Policy Act of 1984, 47 United States Code section 521 et seq. (1984 Cable Act), specifically 47 United States Code section 553(a).
 
 [7]
 
 They argue that section 593d, former subdivision (b) construed as a general intent statute conflicts with 47 United States Code section 553(a) because the federal statute requires proof that the manufacturer of a converter/decoder specifically intended to facilitate the theft of cable signals.
 

 
 *1396
 
 The supremacy clause preempts state laws that “interfere with, or are contrary to” federal law. (See U.S. Const., art. VI, cl. 2;
 
 Hillsborough County
 
 v.
 
 Automated Medical Labs.
 
 (1985) 471 U.S. 707, 712-713 [105 S.Ct. 2371, 2374-2375, 85 L.Ed.2d 714].) “Preemption analysis always starts with the presumption that Congress did not intend to displace state law.”
 
 (State of Cal.
 
 ex rel.
 
 Water Res. Bd.
 
 v.
 
 F.E.R.C.
 
 (9th Cir. 1989) 877 F.2d 743, 746.) The intention of Congress serves as the “ultimate touchstone.”
 
 (California Federal S. & L. Assn.
 
 v.
 
 Guerra
 
 (1987) 479 U.S. 272, 284 [107 S.Ct. 683, 691, 93 L.Ed.2d 613].) Federal law may preempt state law in three ways. First, Congress may preempt state law by an express statement. Second, the state law will be preempted where the state law actually conflicts with federal law, that is, when it is impossible to comply with both state and federal law or where state law is so inconsistent with federal law that it stands as an obstacle to the accomplishment of the objectives of Congress. Third, preemption can be found where the scheme of federal regulation is “sufficiently comprehensive to make reasonable the inference that Congress ‘left no room’ for supplementary state regulation.”
 
 (Id.
 
 at p. 281 [107 S.Ct. at p. 689];
 
 Florida Avocado Growers
 
 v.
 
 Paul
 
 (1963) 373 U.S. 132, 142-143 [83 S.Ct. 1210, 1217-1218, 10 L.Ed.2d 248];
 
 Hines
 
 v.
 
 Davidowitz
 
 (1941) 312 U.S. 52, 67 [61 S.Ct. 399, 404, 85 L.Ed. 581].) We consider each of these contentions in turn.
 

 First, we find that Congress did not intend the 1984 Cable Act to preempt state laws, like section 593d, which prohibit the unauthorized reception of cable signals. (E.g.,
 
 Ciminelli
 
 v.
 
 Cablevision
 
 (E.D.N.Y. 1984) 583 F.Supp. 144,157-158 [court rejected plaintiff’s argument that New York Penal Code, which effectively eliminates market for private purchase of cable equipment, violated the supremacy clause and was preempted by federal cable laws];
 
 (Quincy Cablesystems, Inc.
 
 v.
 
 Sully’s Bar, Inc.
 
 (D.Mass. 1988) 684 F.Supp. 1138, 1142 [observing that 47 United States Code section 553 does not preempt states from drafting and enforcing state laws prohibiting unauthorized interception and use of cable transmissions].) Indeed, Congress made its intentions clear: “Nothing in this title shall prevent any State or franchising authority from enacting or enforcing laws, consistent with this section, regarding the unauthorized interception or reception of any cable service or other communications service.” (47 U.S.C. § 553(c)(3)(D).) Therefore, we conclude Congress has not expressly preempted section 593d, former subdivision (b).
 

 Second, we perceive no conflict between the state and federal statutes. The objectives of both the federal and the state criminal laws governing the reception of cable signals are entirely consistent. Like federal law, the clear purpose of section 593d is to deter the theft of cable by requiring the
 
 *1397
 
 customers who receive cable transmissions and the entities who distribute equipment to receive those transmissions to obtain authorization from the cable operator. The federal law achieves that aim in 47 United States Code section 553(a) while the state achieves it in section 593d, subdivision (a) and former subdivision (b). That the language of the two statutes differs somewhat and that the federal law accomplishes its aim in one statutory subdivision rather than two, does not diminish the fact that they have a consistent objective.
 

 Finally, we find the supremacy clause is not triggered by the third method of preemption, namely that federal law so completely occupies the field there is no room for state regulation. Clearly, Congress intended state and local governance of cable systems to co-exist side by side with the federal regulations: “The purposes of [1984 Cable Act] are to [inter alia] establish guidelines for the exercise of Federal, State, and local authority with respect to the regulation of cable systems.” (47 U.S.C. § 521(3).)
 

 C.
 
 The Commerce Clause
 

 Appellants assert that section 593d, former subdivision (b) violates the commerce clause because it directly regulates interstate commerce by outlawing the importation and sale of unauthorized cable converters and decoders.
 

 However, as the foregoing demonstrates, federal law also regulates the sale of cable converter/decoders and criminalizes the same conduct, that is, the manufacture and distribution of equipment for the unauthorized reception of cable signals. (47 U.S.C. § 553(a).) Where Congress has proscribed certain interstate commerce, Congress has determined that such commerce is “not in the national interest.”
 
 (Pic-A-State PA, Inc.
 
 v.
 
 Com. of Pa.
 
 (3d Cir. 1994) 42 F.3d 175, 179.) Therefore, “. . . it does not offend the purpose of the Commerce Clause for states to discriminate or burden that commerce.”
 
 (Ibid.)
 
 In cases where Congress has made it a crime to conduct certain commerce and a similar state penal statute in the same area is challenged as violating the commerce clause, the courts conduct a twofold inquiry, asking: “(1) whether federal law precluded all state legislation in the area, and (2) if the state regulation is not precluded, whether the state statute conflicts with the federal provision.”
 
 (Ibid.;
 
 see
 
 California
 
 v.
 
 Zook
 
 (1949) 336 U.S. 725, 733 [69 S.Ct. 841, 845-846, 93 L.Ed. 1005].)
 

 As demonstrated in connection with our analysis of the supremacy clause, the 1984 Cable Act does not prohibit state regulation of cable nor does it conflict with section 593d. Consequently we conclude that section 593d, former subdivision (b) does not violate the commerce clause.
 

 
 *1398
 
 IV.
 
 Appellants’ Convictions Are Supported by Sufficient Evidence
 

 Appellants contend that their convictions must be reversed because there was insufficient evidence that they failed to obtain the required authorizations from a franchised or duly licensed cable system under 593d, former subdivision (b), and because there was insufficient evidence that they “agreed” to violate section 593d, former subdivision (b). We disagree.
 

 Our role in reviewing the evidence is limited. The appropriate test for determining a claim of insufficiency of the evidence in a criminal case is, looking at the entire record, whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt.
 
 (People
 
 v.
 
 Jones
 
 (1990) 51 Cal.3d 294, 314 [51 Cal.3d 294, 270 Cal.Rptr. 611, 792 P.2d 643].) On appeal, this court must consider the evidence in the light most favorable to the prosecution and must presume the existence of every fact the trier could reasonably deduce from the evidence, in support of the judgment.
 
 (Ibid.)
 
 Thus, where the record discloses substantial evidence—that is reasonable, credible and of solid value—we accord due deference to the trier of fact and do not substitute our conclusion for that of the fact finder.
 
 (Ibid.)
 
 With these principles in mind, we turn to appellants’ contentions and the evidence in the record.
 

 A.
 
 “Authorization” Evidence
 

 Appellants interpret section 593d, former subdivision (b) to require that they obtain authorization to manufacture, sell and advertise their converter/decoder from only
 
 one
 
 cable system. They offered an alleged letter of “authorization” from ADP as proof that they had such authorization.
 

 Appellants’ argument is premised on an erroneous interpretation of section 593d, former subdivision (b). As we have discussed elsewhere in this opinion, section 593d, former subdivision (b) is quite clear that Gage and Cable Ready were required to obtain authorizations from
 
 each and every
 
 cable television system whose signals their converter/decoders were customized to decode. Evidence that the appellants’ converter/decoders descrambled the cable transmissions of just one cable television system without authorization from that system would support appellants’ convictions. Consequently, whether ADP gave appellants an authorization, whether that authorization was valid and whether ADP qualifies as a franchised or duly licensed cable television system is irrelevant.
 
 [8]
 

 The prosecution demonstrated that converter/decoders seized from both Gage and Cable Ready descrambled the scrambled signals of Continental
 
 *1399
 
 Cable. The trial court also received uncontroverted evidence that neither Continental Cable nor any other public federal or state cable franchising entity authorized Gage or Cable Ready to make, sell or advertise these converter/decoders. We therefore find substantial evidence for a reasonable trier of fact to conclude that neither Gage nor Cable Ready had the required authorizations to make, sell or advertise their converter/decoders.
 
 [9]
 

 B.
 
 Evidence of the “Agreement” to Violate Section 593d, Former Subdivision (b)
 

 Appellants argue that there was insufficient evidence of their “agreement” to manufacture, sell or advertise unauthorized converter/decoders.
 

 A criminal conspiracy exists where it is established that there was an unlawful agreement to commit a crime between two or more people, and an overt act in furtherance of the agreement. (See § 182, subd. (a)(1).) To sustain a conviction for conspiracy the prosecution must show not only that the conspirators intended to agree but also that they intended to commit the elements of the offense.
 
 (People
 
 v.
 
 Swain
 
 (1996) 12 Cal.4th 593, 600 [49 Cal.Rptr.2d 390, 909 P.2d 994].) In proving a conspiracy, however, it is not necessary to demonstrate that the parties met and actually agreed to undertake the unlawful act or that they had previously arranged a detailed plan. The evidence is sufficient if it supports an inference that the parties positively or tacitly came to a mutual understanding to commit a crime. Therefore, conspiracy may be proved through circumstantial evidence inferred from the conduct, relationship, interests, and activities of the alleged conspirators before and during the alleged conspiracy.
 
 (People
 
 v.
 
 Cooks
 
 (1983) 141 Cal.App.3d 224, 311 [190 Cal.Rptr. 211].)
 

 Appellants present two arguments concerning the sufficiency of evidence concerning their alleged “agreement” to violate section 593d, former subdivision (b). First, appellants argue that because the “authorization” requirement of section 593d, former subdivision (b) was vague there was insufficient evidence that appellants intended to agree to commit that element of the crime. As set forth above, however, section 593d, former
 
 *1400
 
 subdivision (b) is not vague. The authorization element required appellants to obtain express authorizations from those cable television systems whose signals they intended their equipment to descramble. Appellants learned the identities of these cable systems when appellants’ customers placed their orders. Therefore, appellants knew the identities of the entities from whom they were required to obtain authorization. That appellants “agreed” to not seek such authorizations is reasonably inferred from the evidence that such authorizations were not sought nor given by cable systems such as Continental Cable whose signals appellants’ converter/decoders descrambled.
 

 Second, appellants assert that there was insufficient evidence linking Conn and Weaver to the conspiracy. Appellants maintain that Conn and Weaver were prosecuted on the basis of their mere association with Gage and Cable Ready. While “mere association” cannot establish a conspiracy, “[w]here there is some evidence of participation or interest in the commission of the offense, it, when taken with evidence of association, may support an inference of a conspiracy to commit the offense.”
 
 (People
 
 v.
 
 Hardeman
 
 (1966) 244 Cal.App.2d 1, 41 [53 Cal.Rptr. 168].)
 

 Here there was sufficient evidence of both Conn’s and Weaver’s participation and interest in the conspiracy to manufacture, sell and market unauthorized converter/decoders. With respect to Conn, there was evidence that he was second in command at Gage and managed the office. The prosecutor also presented evidence that Conn had a key role in selecting the types of advertisements as well as the advertisers for Gage’s products. Concerning Weaver, the evidence indicated that he was third in command at Gage and was also president of Tore Industries, which operated under the Cable Ready name. He was also listed as sole proprietor on a lease for Tore Industries/Cable Ready for property to be used to manufacture and distribute Cable Ready’s products. In addition, receipts, checks, purchase orders and other documents for parts, tools and equipment used to modify converters and converter/decoders were found at Weaver’s desk.
 

 We conclude that based on this evidence a reasonable trier of fact could find that the prosecution sustained its burden of proving appellants’ guilt.
 

 V.
 
 The Three-year Statute of Limitations for Criminal Conspiracy Governs and, Therefore, the Charges Against Appellants Were Timely Because the Information Was Filed in Less Than Three Years After the Last Overt Act in the Conspiracy
 

 Appellants concede, as they must, that conspiracy is a separate crime from the underlying offense. They argue, however, that to determine
 
 *1401
 
 the statute of limitations for a charge of conspiracy the court must look to the statute of limitations which applies to the underlying offense that is the object of the conspiracy. Consequently, appellants argue that the one-year statute of limitations for violation of section 593d, former subdivision (b) applies to this case and therefore their convictions are invalid because more than one year had elapsed between the last act in the conspiracy and the filing of the criminal complaint. This argument lacks merit.
 

 Criminal conspiracy is governed by a three-year statute of limitations.
 
 (People
 
 v.
 
 Crosby
 
 (1962) 58 Cal.2d 713,
 
 727
 
 [25 Cal.Rptr. 847, 375 P.2d 839]; see § 801.) The statute of limitations for conspiracy is distinct and separate from the limitations period for the underlying offense. (See
 
 People
 
 v.
 
 Zamora
 
 (1976) 18 Cal.3d 538, 560 [134 Cal.Rptr. 784, 557 P.2d 75].) Such is the case even where the statute of limitations for the underlying offense is shorter than the limitations period for the conspiracy charge, and where, for example, if the defendant had been charged only with the underlying offense, the prosecution would be time barred.
 
 (Davis
 
 v.
 
 Superior Court
 
 (1959) 175 Cal.App.2d 8, 19-22 [345 P.2d 513] [rejecting defendant’s claim that prosecution of the conspiracy charge was untimely because the shorter statute of limitations on the underlying misdemeanor charge had expired].) We also note that these statutes of limitations are separate even where this distinction works to the defendant’s benefit. For example, if charged with conspiracy to commit certain offenses like murder, where the underlying offense is not governed by a statute of limitations, the three-year statute of limitations for conspiracy would govern. Consequently, we conclude that appellants’ conspiracy charged was governed by the three-year statute of limitations for criminal conspiracy.
 
 (People
 
 v.
 
 Zamora, supra,
 
 18 Cal.3d at p. 560, fn. 20.)
 

 Appellants present no compelling argument to change our view. Appellants’ contention is premised upon
 
 dicta
 
 in a United States Supreme Court case interpreting the appropriate statute of limitations under the federal law for the crime of conspiring to make a false statement in connection with a naturalization proceeding.
 
 (Bridges
 
 v.
 
 United States
 
 (1953) 346 U.S. 209 [73 S.Ct. 1055, 97 L.Ed. 1557].) In
 
 Bridges
 
 the government sought to apply the Wartime Suspension of Limitations Act to avoid the prosecution being barred by the expiration of the statute of limitations which would otherwise apply to the offense. The Wartime Suspension of Limitations Act, passed during World War II, created an exception to the general policy of “repose” in criminal law.
 
 (Bridges
 
 v.
 
 United States, supra,
 
 346 U.S. at pp. 217-218 [73 S.Ct. at pp.1060-1061].) The act’s purpose was to suspend the statute of limitations for crimes involving frauds in connection with the government’s wartime procurement contracts so as to give federal prosecutors additional
 
 *1402
 
 time to discover and prosecute such offenses.
 
 (Ibid.)
 
 The Supreme Court rejected the government’s attempt to use the Wartime Suspension of Limitations Act, ruling that the fraud at issue in the naturalization proceeding had no connection to any fraud in the procurement of a government wartime contract. In so ruling, the court stated in
 
 dicta
 
 that a charge of conspiracy should not be entitled to a longer statute of limitations than the charge of committing the underlying offense.
 
 (Bridges
 
 v.
 
 United States, supra,
 
 346 U.S. at p. 223 [73 S.Ct. at p. 1063].)
 

 We find
 
 Davis
 
 and
 
 Zamora
 
 more persuasive because they interpret California statutes rather than a wholly unrelated federal one.
 

 Finally, we are not persuaded by appellants’ argument that because conspiracies are punished the same as the underlying offense, the statute of limitations for conspiracies should be the same as the underlying offense. While section 182, subdivision (a)(1) expressly provides that conspiracies should be
 
 punished
 
 the same as the underlying offense, the statute is silent on the issue of which statute of limitations should apply. Legislative silence in view of the case law such as
 
 Davis, Crosby
 
 and
 
 Zamora,
 
 is instructive. It informs us that there is no reason to depart from the legal precedent which provides that criminal conspiracy has a three-year statute of limitations, irrespective of the underlying offense.
 

 Disposition
 

 The judgment is affirmed.
 

 Lillie, P. J., and Neal, J., concurred.
 

 [1]
 

 All statutory references cited herein are to the California Penal Code unless otherwise indicated.
 

 [2]
 

 In May 1996, a count for conspiracy to commit fraud was dismissed.
 

 [3]
 

 At the time relevant to this case section 593d, former subdivision (b) provided: “Every person who, without the express authorization of a franchised or other duly licensed cable television system, knowingly and willfully manufactures, imports into this state, distributes, sells, offers to sell, possesses for sale, or advertises for sale any device, or any plan or kit for a device or for a printed circuit, designed in whole or in part to decode, descramble or otherwise make intelligible any encoded, scrambled or other nonstandard signal carried by that cable television system, is guilty of a misdemeanor punishable by a fine not exceeding ten thousand dollars ($10,000) or by imprisonment in the county jail or both. For the purpose of this subdivision, ‘encoded, scrambled or other nonstandard signal’ shall include, without limitation, any type of signal or transmission that is not intended to produce an intelligible program or service without the aid of a decoder, descrambler, filter trap or some similar device. A second or subsequent conviction is punishable by a fine not exceeding twenty thousand dollars ($20,000) or by imprisonment in the county jail up to one year, or both.”
 

 In 1996 section 593d was amended. Subdivision (b) now provides: “[A]ny person who knowingly and willfully manufactures, assembles, modifies, imports into this state, distributes, sells, offers to sell, advertises for sale, or possesses for any of these purposes, any device or kit for a device, designed, in whole or in part, to decrypt, decode, descramble, or otherwise make intelligible any encrypted, encoded, scrambled, or other nonstandard signal carried by a multichannel video or information services provider, unless the device has been granted an equipment authorization by the Federal Communications Commission (FCC), is guilty of a public offense . . . .”
 

 [4]
 

 As appellants correctly point out, section 593d, subdivision (a) makes it a misdemeanor for a cable
 
 customer
 
 to receive unauthorized cable television signals. Subdivision (a) therefore effectively places an independent requirement upon customers to obtain the appropriate authorization from their cable television system providers to receive cable television signals. The fact remains, however, that in those situations where customers ignore subdivision (a) and decide not to seek authorization, cable operators would have no notice that their signals were being illegally descrambled absent the obligation to seek authorization imposed upon converter/decoder sellers by section 593d, former subdivision (b).
 

 [5]
 

 In view of this conclusion, we do not reach appellants’ claim that their conviction was not supported by sufficient evidence of their specific intent to aid in the theft of cable transmissions.
 

 [6]
 

 47 United States Code section 522(7) defines “cable system” as: “[A] facility, consisting of a set of closed transmission paths and associated signal generation, reception, and control equipment that is designed to provide cable service which includes video programming and which is provided to multiple subscribers within a community . . . .”
 

 [7]
 

 47 United States Code section 553(a) provides, in pertinent part:
 

 “(1) No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law. . . .
 

 “(2) For the purposes of this section, the term ‘assist in intercepting or receiving’ shall include the manufacture or distribution of equipment intended by the manufacture or distributor .. . for unauthorized reception of any communications service offered over a cable system in violation of subparagraph (1).”
 

 [8]
 

 We observe, however, that the prosecution presented evidence that undermines the credibility of the “authorization” by ADP. First, the one-page letter purportedly authorizing Gage
 
 *1399
 
 to make, sell and advertise converter/decoders was not requested from ADP until after the search warrant was executed on Gage’s and Cable Ready’s operations. Second, according to ADP, the language comprising the so-called authorization and listing ADP as a “duly licensed cable television system” was added by appellant Prevost, not ADP.
 

 [9]
 

 Equally flawed is appellants’ argument that their convictions are infirm because the prosecution did not demonstrate that Gage’s or Cable Ready’s
 
 customers
 
 had failed to obtain authorization from their respective cable operators. Section 593d, former subdivision (b) did not require the prosecution to prove this. Gage and Cable Ready violated section 593d, former subdivision (b) when
 
 they
 
 failed to obtain the proper authorization, irrespective of whether their customers did so under 593d, subdivision (a).