Filed 3/28/13  P. v. Wilson CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARKEVIN WILSON,<br><br>    Defendant and Appellant. | D061767<br><br><br>(Super. Ct. No. SCD234221) |

APPEAL from a judgment of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Affirmed.

In this appeal, Markevin Wilson challenges the amount of victim restitution he was ordered to pay as a condition of probation.  We reject his claim of error and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Markevin Wilson and two codefendants, Roy Winters and Jessica Wise, were prosecuted for a number of theft-related crimes, including conspiracy to commit grand theft.  The crimes arose from the unauthorized telephone transfer of money from three Navy Federal Credit Union (NFCU) accounts to NFCU accounts belonging to appellant

and Wise, and to Winters via Western Union. The victims were former United States Marines assigned to the 1st Tank Battalion who had served together in the same unit and were previously stationed at Twentynine Palms, California.  Appellant and Winters, good friends since high school, were also former Marines who had been stationed at Twentynine Palms; appellant was assigned to the 3d Tank Battalion and Winters to the 1st Tank Battalion.

Starting in the afternoon of January 17, 2011, and ending on January 19, NFCU received approximately 17 cell phone calls concerning these three accounts.  The callers provided victim identification information about the account holders, including Social Security numbers and dates of birth—information imprinted on the "dog tags" the victims wore while on active duty.  The information was sufficient to permit the withdrawal of funds from the victims' accounts to other accounts.  One cell phone belonged to appellant and the other to Winters.  For all but one of the calls, the voice of the male caller sounded the same.  In some of the calls, other voices could be heard in the background providing the caller with information responsive to NFCU inquiries.[1]

In January 2011, appellant lived in Lakeside with three roommates and often had contact with his codefendants.  Wise, the girlfriend of one of the roommates, routinely spent the night at the house and used the Lakeside address on her driver's license.

---

[1]     One of the victims informed the probation officer that he believed appellant was the cousin of a Marine assigned to a supply unit who would have access to personal information.

Winters, a frequent visitor to the house, also used the Lakeside address on his license and received his mail there.

On January 18 at 3:23 a.m., in response to a telephone request, NFCU transferred $13,500 from victim Robert Lloyd's NFCU account to appellant's NFCU account. At about 9:00 a.m., appellant withdrew $9,550 in cash from his account at an NFCU branch in Mission Valley.[2] Lloyd did not know appellant or Winters and did not authorize the use of his personal information or the withdrawal of funds from his account.

Similarly, on January 18 at about 10:30 a.m., $500 was transferred telephonically, without permission, from victim Todd Denny's[3] NFCU account to Western Union for the benefit of Winters. On January 19, $6,300 was transferred telephonically, without permission, from victim Samuel Suddarth's NFCU account to Wise's NFCU account. Later that day, Wise withdrew that $6,300 from her account at the NFCU branch in Santee.

As a result of these activities, appellant, Winters and Wise were charged with conspiracy to commit grand theft (Pen. Code,[4] § 182, subd. (a)(1)), including six overt

[2]    Because there was a zero balance in appellant's account when the funds were credited to his account and he was delinquent in loan payments to NFCU, his withdrawal was limited to $9,550.

[3]    Victim Denny is referred to as "Denney" in the reporter's transcript on appeal and "Denny" in the information. For convenience, we shall refer to him as Denny.

[4]    All subsequent statutory references are to the Penal Code.

acts in support of the conspiracy. Appellant was specifically identified in overt act 1 (fraudulently requesting a telephone transfer of $13,500 from victim Lloyd's account to his own account on January 18) and overt act 2 (personally withdrawing $9,550 from his account on January 18).[5] Appellant was also charged with two counts of violating section 530.5, subdivision (a) (unauthorized use of personal identifying information of victims Lloyd and Denny); two counts of violating section 487, subdivision (a) (grand theft of personal property from Lloyd and Denny); and one count of violating section 459 (burglary as related to the withdrawal of funds from NFCU).

The jury convicted appellant of the conspiracy count and three counts associated with Lloyd. The jury acquitted him of using Denny's identity without permission, and the court dismissed the grand theft charge related to Denny as the amount in issue did not constitute grand theft.[6] The court granted probation to appellant with various conditions, including public service, a stayed term of custody, fees and fines and victim restitution in the amount of $16,350 to NFCU (the total amount of its losses from the three fraudulent transfers).

---

[5] Winters was identified in the overt acts concerning the transfer of money from the Lloyd, Denny and Suddarth accounts. Wise was identified in the overt acts concerning the Suddarth account. Overt act 4, which alleged that Winters retrieved the $500 Western Union check from a liquor store on January 18 was stricken before the matter was submitted to the jury as the prosecution did not present any evidence to support this act.

[6] Appellant was the only defendant to take the matter to trial. Winters and Wise, who were charged as coconspirators and with individual counts of burglary, grand theft and the unauthorized use of another person's identity, reached plea agreements.

4

On appeal, appellant raises only one issue—the amount the court ordered in victim restitution. Although he acknowledges the court properly ordered $9,550 in victim restitution based on the losses from the Lloyd account, he asserts that the court erred in including the losses from the Suddarth and Denny accounts because (1) all of his convictions arose from the Lloyd account; (2) he was not specifically identified in the overt acts charged in the conspiracy count relating to the Denny and Suddarth accounts; (3) he was acquitted of fraudulently using Denny's identifying information; and (4) he was not charged in the other nonconspiracy-related charges concerning the Suddarth and Denny accounts. According to appellant, there was no evidence showing NFCU suffered an economic loss "as a result of [his] conduct" as related to the Suddarth and Denny accounts and thus this portion of the restitution order was unauthorized. (§ 1202.4, subd. (f).) The argument fails.

ANALYSIS

The trial court is required to award restitution to a victim who has suffered economic loss as a result of the defendant's conduct. (§ 1202.3, subd. (f).) The restitution order shall be "sufficient to fully reimburse the victim or victims for every determined economic loss incurred as a result of the defendant's criminal conduct . . . ." (§ 1202.4, subd. (f)(3).) On appeal, we review the trial court's restitution order for abuse of discretion. (*People v. Giordano* (2007) 42 Cal.4th 644, 663.) "No abuse of discretion

5

will be found where there is a rational and factual basis for the amount of restitution ordered." (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542.)

A criminal conspiracy exists when there is an unlawful agreement between two or more people to commit a crime, and an overt act in furtherance of the agreement. (*People v. Prevost* (1998) 60 Cal.App.4th 1382, 1399.) The prosecution must show the defendant intended to agree and intended to commit the offense. (*Ibid*.; *People v. Morante* (1999) 20 Cal.4th 403, 416.) A conspirator need not personally participate in any of the overt acts associated with the conspiracy as long as he or she conspired to commit the crime and an overt act is committed by a coconspirator. (*People v. Morante, supra*, at p. 417; *People v. Cooks* (1983) 141 Cal.App.3d 224, 312.) Throughout the duration of the conspiracy, the act of one conspirator is the act of all members of the conspiracy. Each coconspirator is responsible for the criminal acts of all other conspirators where those acts are within the scope of the conspiracy and reasonably foreseeable as the natural consequence of the conspiratorial agreement. (*People v. Hardy* (1992) 2 Cal.4th 86,188; *People v. Morante, supra*, at p. 417) " ' "Once the defendant's participation in the conspiracy is shown, it will be presumed to continue unless he is able to prove, as a matter of defense, that he effectively withdrew from the conspiracy." ' " (*People v. Sconce* (1991) 228 Cal.App.3d 693, 701.)

Section 1203.1, subdivision (b), authorizes the payment of restitution as a condition of probation. When the defendant is granted probation, restitution need not be limited to amounts flowing directly from the criminal acts of which defendant was

6

convicted. (See *People v. Lent* (1975) 15 Cal.3d 481, 486.) "Under certain circumstances, restitution has been found proper where the loss was caused by related conduct not resulting from a conviction [citation], . . . and by conduct resulting in an acquittal [citation]." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121.) Where probation is granted, the court has broad discretion " 'to impose conditions to foster rehabilitation and to protect public safety. [Citation.] This power includes ordering restitution, if such a condition is reasonably related to the crime of which the defendant was convicted or to deter future criminality.' " (*People v. Woods* (2008) 161 Cal.App.4th 1045, 1051; § 1203.1.)

Here, appellant was convicted of conspiracy to commit grand theft arising from a scheme involving the unauthorized use of the victims' identifying information to access their bank accounts without permission and then telephonically transfer funds from their accounts in a manner that made the funds available to the coconspirators. In less than 48 hours, and in furtherance of the conspiracy, the coconspirators successfully accessed three accounts, resulting in a loss of $16,350 to NFCU (which reimbursed the three account holders). As a convicted member of the conspiracy, appellant is liable not only for his own conduct, but for the acts of Wise and Winters, whose conduct was within the scope of the conspiracy and reasonably foreseeable. NFCU suffered an economic loss as a result of the conspiracy and the court properly ordered appellant to pay $16,350.

Likewise, because the court granted probation, the court had broad authority to take into account related criminal conduct, including involving acquittals, to fashion a

7

condition of probation designed to foster rehabilitation and deter future criminality. In setting restitution the court did exactly that. At sentencing, the court referenced appellant's exemplary service in the Marines, acknowledged his many abilities and expressed disappointment that appellant had disregarded his military training and education when "it came time to uphold the law." The court indicated it would consider reducing appellant's convictions to misdemeanors in the future, but had to assess how he performed on probation over the years. The court urged appellant to work hard, turn his life around and comply with all conditions of probation, including victim restitution. The court did not err in setting restitution at $16,350.

DISPOSITION

Affirmed.


HALLER, J.

WE CONCUR:


McCONNELL, P.J.


IRION, J.

8