[No. S098821. July 22, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE LUIS RODRIGUEZ, Defendant and Appellant.

**COUNSEL**

Athena Shudde, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner and Robert R. Anderson, Chief Assistant Attorneys General, Carol Wendelin Pollack and Pamela C. Hamanaka, Assistant Attorneys General, Chung Mar, John R. Gorey and Sharlene A. Honnaka, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

CHIN, J.—Penal Code section 288.5[1] punishes the continuous sexual abuse of a child under 14 by any person residing with, or having "recurring access" to, the child. In this case, we must decide whether the quoted phrase has a technical meaning requiring sua sponte jury instructions, or whether the term is so commonly understood that no special instructions are required. We conclude that the trial court in the present case did not err in failing to give clarifying instructions on its own motion.

### FACTS

Jose Luis Rodriguez appeals from the judgment entered following his conviction by jury of two counts of continuous sexual abuse of a child. (§ 288.5, subd. (a).) He was sentenced to prison for 28 years. The following facts are largely taken from the Court of Appeal's opinion in this case.

Fernando V. was born in May 1983 and lived in Los Angeles County. Defendant lived four houses from Fernando, in a trailer on the back of a lot. Everyone who lived on the block knew defendant as a soccer coach who participated in soccer activities with neighborhood children. Although his mother believed otherwise, Fernando testified he was not on defendant's soccer team, but his older brother was, and Fernando would watch his brother play. Fernando would also "do whatever [defendant] would tell him to do" and often ran errands for defendant.

Defendant first molested Fernando in 1990 when Fernando was seven years old, and continued to molest him until he was about nine years old. These acts occurred on school days and weekends in the trailer and involved fondling, masturbation, oral copulation and sodomy. At one point, the molestations occurred almost every day. Defendant threatened to shoot Fernando or his mother if he told anyone regarding the acts. Defendant does not presently contest the sufficiency of the evidence establishing these molestations and, accordingly, further details are unnecessary.

Ernesto R. was born in August 1987. From 1990 to 1998, Ernesto lived in his grandparents' house on the same lot where defendant's trailer was located. Defendant regularly used a bathroom inside this house. Ernesto knew defendant was a soccer coach and Ernesto's mother viewed defendant as if he were an uncle to Ernesto and her other children.

About 1994 or 1995, when Ernesto was about seven or eight years old, defendant began molesting him two to three times a week, every week, for

---

[1] Unless otherwise indicated, all statutory references are to the Penal Code.

about two or three years. The acts involved fondling, oral copulation and sodomy. Defendant threatened to hit Ernesto if he told anyone about these acts.

## DISCUSSION

Section 288.5 was adopted in 1989 (Stats. 1989, ch. 1402, § 4, p. 6140) to criminalize "continuous sexual abuse of a child." Subdivision (a) of this section provides in pertinent part that "[a]ny person who either resides in the same home with the minor child *or has recurring access to the child,* who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years at the time of the commission of the offense, as defined in subdivision (b) of Section 1203.066, or three or more acts of lewd or lascivious conduct under Section 288, with a child under the age of 14 years at the time of the commission of the offense is guilty of the offense of continuous sexual abuse of a child and shall be punished by imprisonment in the state prison for a term of 6, 12, or 16 years." (Italics added.)

The Legislature's accompanying statement of purpose declared that "there is an immediate need for additional statutory protection for the most vulnerable among our children, those of tender years, some of whom are being subjected to continuing sexual abuse by those commonly referred to as 'resident child molesters.' These molesters reside with, *or have recurring access to*, a child and repeatedly molest the child over a prolonged period of time but the child, because of age or the frequency of the molestations, or both, often is unable to distinguish one incident from another . . . , and as a consequence prosecutors are unable to . . . overcome . . . constitutional due process problems . . . ." (Stats. 1989, ch. 1402, § 1, subd. (a), p. 6138, italics added, reprinted at Historical and Statutory Notes, 29B pt. 2 West's Ann. Evid. Code (1995 ed.) foll. § 782, p. 631.) The Legislature also declared that it intended the penalty for continuous sexual child abuse "shall be greater than the maximum penalty under existing law for any single felony sex offense." (Stats. 1989, ch. 1402, § 1, subd, (b), p. 6138, reprinted at Historical and Statutory Notes, 29B pt. 2 West's Ann. Evid. Code, *supra,* foll. § 782, at p. 631.)

Guided by the foregoing express legislative declarations of intent, we turn to the question before us, namely, the sufficiency of instructions that simply use the statutory term "recurring access," without further definition or elaboration. As a general rule, in the absence of a request for amplification, the language of a statute defining a crime or defense usually is an appropriate basis for an instruction. If a statutory word or phrase is

commonly understood and is not used in a technical sense, the court need not give any sua sponte instruction as to its meaning. If, however, a word or phrase is used in a technical sense differing from its commonly understood meaning, clarifying instructions are appropriate and should be given on the court's own motion. (*People v. Bland* (2002) 28 Cal.4th 313, 334 [121 Cal.Rptr.2d 546, 48 P.3d 1107]; *People v. Smithey* (1999) 20 Cal.4th 936, 981 [86 Cal.Rptr.2d 243, 978 P.2d 1171]; *People v. Estrada* (1995) 11 Cal.4th 568, 574-575 [46 Cal.Rptr.2d 586, 904 P.2d 1197].) We must decide here whether the Legislature used the phrase "recurring access" in some technical sense that would require sua sponte instructions, i.e., whether the jury would have difficulty in understanding the statute without guidance. We conclude otherwise.

In the present case, the court instructed the jury based on CALJIC No. 10.42.6, using the statutory language of section 288.5, subdivision (a), and explaining that one element of the offense of continuous sexual abuse was defendant's recurring access to the minor. Defendant failed to request amplification of that term, and accordingly the trial court was not obligated, sua sponte, to define the phrase unless it had a "technical sense peculiar to the law," that is, a "statutory definition differ[ing] from the meaning that might be ascribed to the same terms in common parlance." (*People v. Estrada, supra,* 11 Cal.4th at pp. 574-575.)

We discern no meaning, technical or otherwise, of the term "recurring access" other than its commonly understood meaning as an ongoing ability to approach and contact someone time after time. (See Merriam-Webster's Collegiate Dict. (10th ed. 1993) p. 6 [the term "access" means "permission, liberty, or ability to enter, approach, communicate with, or pass to and from," or "freedom or ability to obtain or make use of"]; *id.* at p. 978 [the term "recur" means "to occur again after an interval: occur time after time"]; cf. *People v. Grant* (1999) 20 Cal.4th 150, 155 [83 Cal.Rptr.2d 295, 973 P.2d 72].) As noted, the evidence here indicated defendant, a soccer coach well known in the neighborhood, molested his two victims several times each week for several years. We think the jury, armed with no more than the statutory language and the jury's own common understanding of its meaning, would have had no difficulty whatever in determining whether or not defendant had recurring access to his child victims.

Defendant relies on *People v. Gohdes* (1997) 58 Cal.App.4th 1520 [68 Cal.Rptr.2d 719] (*Gohdes*), to support his position that the court should have given additional instructions. There, the Court of Appeal read into section 288.5's requirement of recurring access a "qualitative" element focusing on the relationship between the defendant and his victim. (*Gohdes,* at p. 1529.)

In *Gohdes's* view, based on its interpretation of the legislative history of section 288.5, a mere acquaintance of the victim such as defendant, lacking either (1) a position of authority or respect as to his child victim, or (2) some recurring relationship with him apart from the ongoing sexual contacts, could not be found guilty of violating the section. To the contrary, we believe the Court of Appeal read too much into the statute and reached a conclusion at odds with the clear legislative intent to provide additional protection for victims of child molestation.

In *Gohdes*, the defendant had dated the victim's sister for several years and, on her departure from home, turned his attention on Corrine, the underage victim. Over a period of several years, defendant secretly visited Corrine, climbing in her window and engaging in nonforcible sexual activity with her, culminating in intercourse when she was 14. The Court of Appeal upheld a trial court ruling that, despite his frequent visits, defendant had no recurring access to Corrine because he was neither " 'an invited guest' " nor held any " 'position of trust' " with Corrine's family, and in fact had no " 'legitimate purpose' " in visiting her. (*Gohdes, supra,* 58 Cal.App.4th at p. 1524.)

The *Gohdes* court agreed with the trial court, finding that defendant failed to match any of the "obvious situations" involving true recurring access, such as those involving babysitters or "regularly visiting relatives or friends, etc." (*Gohdes, supra,* 58 Cal.App.4th at p. 1528.) The court failed to explain why defendant did not qualify as a "regularly visiting . . . friend[]." The court reasoned, "the Legislature must have intended a qualitative rather than a quantitative construction of the 'recurring access' element. This is the only type of construction suggested in the legislative history: uncles, babysitters, ex-spouses, non-live-in lovers, etc. There are two common characteristics of these categories. One is that in most categories suggested, the person with recurring access to the child *also is in a position of authority over the child, or is in a position to command respect or obedience from the child*. A second is that in each of these categories, *there was an ongoing relationship between the person with recurring access and the child separate and apart from the relationship formed and characterized by the forbidden sexual activity*. Even apart from the sexual activity, the uncle was still the uncle; the father, the father; the babysitter, the babysitter; the mother's boyfriend, the mother's boyfriend; and so forth. There is no analogous independent relationship in the instant case. Like the magistrate and the superior court, we conclude that the surreptitious assignations involved in this case do not meet the statutory requirement of 'recurring access.' This is simply not the type of relationship to which the statute as written is meant to apply." (*Id.* at p. 1529, italics added.)

Our review of the legislative history fails to support *Gohdes*'s "qualitative" element interpretation. The express legislative purpose in enacting section 288.5 was to provide "additional protection" for victims of child molestation by assuring that "resident" child molesters and others who repeatedly abuse a child over a prolonged period of time would not escape prosecution because of difficulties in pleading and proving with sufficient precision the dates, times, and particular nature of each molestation. (Stats. 1989, ch. 1402, § 1, subds. (a), (b), p. 6138, reprinted at Historical and Statutory Notes, 29B pt. 2 West's Ann. Evid. Code, *supra*, foll. § 782, at p. 631; *People v. Grant, supra*, 20 Cal.4th at pp. 155-156.) It is true that, in describing the need to enact a statute criminalizing continuous sexual abuse, some of the legislative history materials named parents and stepparents as examples of persons with recurring access to children. But we find nothing in those materials to support *Gohdes*'s view that the statute was not intended to apply to persons such as defendant who, despite lack of a familial or similar relationship, nonetheless manage to maintain repeated contact with their victims.

The Court of Appeal in the present case outlined the various letters and memoranda from the Office of the Attorney General, which sponsored the legislation enacted as section 288.5, material that supposedly reflects that office's "gradual development of a broad view, articulated in common parlance, concerning the scope of persons governed by that section." Assuming, as both parties seem willing to do, that we properly may rely on these materials (but see *People v. Johnson* (2002) 28 Cal.4th 240, 247 [121 Cal.Rptr.2d 197, 47 P.3d 1064]; *Calvillo-Silva v. Home Grocery* (1998) 19 Cal.4th 714, 726-727 [80 Cal.Rptr.2d 506, 968 P.2d 65]), we find nothing in those materials supporting *Gohdes*'s interpretation of the statute.

Indeed, although initial drafts of the proposed legislation applied to persons "who occupy positions of trust and confidence," (Deputy Atty. Gen. Edgar Kerry, mem. to Asst. Atty. Gen. Arnold Overoye, Aug. 25, 1988, p. 1) and persons "in a position of special trust with continuing access" (Cal. Dept. Justice, Legis. Proposal, Sept. 23, 1988) to the child victim, ultimately the phrase "recurring access" was chosen by the drafters, it being deemed "broader in its scope" than the earlier proposals. (Deputy Atty. Gen. Edgar Kerry, mem. Nov. 14, 1988, p. 3.) As the present Court of Appeal opinion observed, *Gohdes* "resurrects 'position of trust' and relationship considerations which the Attorney General rejected in his final draft of the proposed legislation" submitted to the Legislature.

In short, as made clear by the legislative declarations accompanying it, section 288.5 was enacted to broaden, not narrow, the reach of this state's

child molestation laws. To the extent it is inconsistent with our opinion, we disapprove *People v. Gohdes, supra,* 58 Cal.App.4th 1520.

Defendant observes that section 288.5, subdivision (a), in addition to requiring residence with or "recurring access" to the victim, also requires the defendant to have committed, over a defined period of time, "three or more acts of substantial sexual conduct" or "three or more acts of lewd or lascivious conduct" with the child victim. Defendant echoes the observation of an appellate case that, accordingly, section 288.5 "is [not] aimed . . . at the stranger who happens to encounter the same victim three times." (*People v. Avina* (1993) 14 Cal.App.4th 1303, 1311 [18 Cal.Rptr.2d 511].) In defendant's view, to avoid rendering the term surplusage, "recurring access" must mean more than mere repeated contact wholly by chance. The Attorney General, on the other hand, argues that the Legislature merely intended the requirement of three acts of sexual misconduct to constitute the "minimum number of acts within the requisite time period" to qualify as continuous sex abuse under the section. As *Avina* states, "The three-act requirement merely sets a 'baseline' for measuring the course of conduct," although *Avina* doubted that mere repeated " 'transient' " contact with the child would suffice to establish "recurring access." (*Id.* at p. 1311.) We will reserve the "wholly by chance contact with strangers" issue for another case. Defendant, as a soccer coach for neighborhood children, was a well-known and respected figure. He was no stranger who simply happened to encounter and sexually abuse his victims repeatedly for several years.

Despite the concerns raised by the concurring and dissenting opinion, we see no "surplusage" problem requiring some special definition of "recurring access" that would require sua sponte instructions. Section 288.5 relates to "continuous sexual abuse" and accordingly requires at least three acts of sexual misconduct with the child victim over at least three months to qualify for prosecution of persons who are either residing with, or have "recurring access" to, the child. Contrary to the concurring and dissenting opinion, not every person who manages to molest a child three times during the requisite period necessarily would have an ongoing ability to approach and contact the child time after time. (See, *ante,* at p. 547.)

We conclude that "recurring access" is a commonly understood term requiring no sua sponte definitional instructions. The judgment of the Court of Appeal so holding is affirmed.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., and Brown, J., concurred.

**WERGEGAR, J., Concurring.**—I write separately to clarify my position with respect to a point of disagreement between the majority and our concurring and dissenting colleague. I disagree with the concurring and dissenting opinion's implication that the statutory term "recurring access" would be reasonably understood by jurors to denote such intermittent "access" as is necessarily implied by discrete instances of actual contact. (See conc. & dis. opn., *post*, at p. 554.) I join the majority, rather, in its determination that the term's commonly understood meaning is "an *ongoing* ability to approach and contact someone time after time." (Maj. opn., *ante*, at p. 547, italics added.) As the majority correctly points out, "not every person who manages to molest a child three times during the requisite period necessarily would have an ongoing ability to approach and contact the child time after time." (Maj. opn., *ante*, at p. 550.) Accordingly, not every person who manages to molest a child three times during the requisite period necessarily would be guilty of violating Penal Code section 288.5, and the concurring and dissenting opinion errs to the extent it suggests that a reasonable juror could conclude otherwise. (See conc. & dis. opn., *post*, at pp. 554-555.)

**MORENO, J., Concurring and Dissenting.**—I concur in the majority opinion's result. I disagree, however, with its reasoning. As elaborated below, if the term "recurring access" in Penal Code section 288.5 (all statutory references are to this code) is not given a special meaning, it will be rendered surplusage. I therefore conclude that "recurring access" has a particular meaning in the context of the statute that differs significantly from the commonly understood meaning, requiring the trial court to instruct the jury sua sponte as to that meaning. Because I also conclude the lack of such instruction was harmless beyond a reasonable doubt in the present case, I would affirm the Court of Appeal judgment upholding defendant's conviction.

The rule for determining when a statute requires a supplementary sua sponte instruction by the trial court is settled: " 'If the jury would have no difficulty in understanding the statute without guidance, the court need·do no more than instruct in statutory language.' [Citations.] [¶] . . . A word or phrase having a technical, legal meaning requiring clarification by the court is one that *has a definition that differs from its nonlegal meaning.* [Citation.] Thus, . . . terms are held to require clarification by the trial court when their statutory definition differs from the meaning that might be ascribed to the same terms in common parlance." (*People v. Estrada* (1995) 11 Cal.4th 568, 574-575 [46 Cal.Rptr.2d 586, 904 P.2d 1197], italics added.)

In the present case, we are asked to interpret the meaning of "recurring access" in section 288.5, which provides in pertinent part: "Any person who

either resides in the same home with the minor child or has recurring access to the child, who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years at the time of the commission of the offense . . . is guilty of the offense of continuous sexual abuse of a child . . . ." The critical interpretive problem of this case is posed by the apparent truism that anybody who has engaged in an act of "substantial sexual conduct" with a child necessarily has had access to the child, and anyone who has engaged in the three or more such acts over three or more months needed to qualify as continuous sexual abuse of a child has had recurring access. If that is the case, then not only the phrase "recurring access" but the entire clause "[a]ny person who either resides in the same home with the minor child or has recurring access to the child" would be surplusage and the statute could have and should have simply read: "Any person . . . who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years at the time of the commission of the offense . . . is guilty of the offense of continuous sexual abuse of a child." But such a construction would be a flagrant violation of the rule that "whenever possible, significance must be given to every word in pursuing the legislative purpose, and the court should avoid a construction that makes some words surplusage." (*Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 330 [87 Cal.Rptr.2d 423, 981 P.2d 52].)

The evident solution to the surplusage problem was proposed by *People v. Gohdes* (1997) 58 Cal.App.4th 1520 [68 Cal.Rptr.2d 719]. The *Gohdes* court first reasoned that "[a] construction that proof of three acts over three months is sufficient to show 'recurring access' would render the recurring-access element redundant." (*Id.* at p. 1529.) It deduced from this that recurring access must be a distinct element of the crime of continuous sexual abuse, requiring a showing that "there was an ongoing relationship between the person with recurring access and the child *separate and apart from the relationship formed and characterized by the forbidden sexual activity.*" (*Ibid.*, italics added.)

Although the court observed that this relationship is often characterized by the adult's being "in a position to command respect or obedience from the child" (*People v. Gohdes, supra,* 58 Cal.App.4th at p. 1529), I do not read the opinion as requiring this type of relationship. In order to avoid redundancy in the statute, all that is required is that the relationship be "separate and apart from the relationship formed and characterized by the forbidden sexual activity." (*Ibid.*) I understand the term "ongoing relationship" to mean simply a *legitimate* relationship of some kind with a child that provides an

adult with opportunities to engage in an illegitimate sexual one. Strictly speaking, it is more correct to say that the perpetrator must have some legitimate "means of access to" rather than an "ongoing relationship with" the child. Although the means of access will often be in the form of an ongoing relationship with a child, it can also sometimes assume the form of a relationship with a child's parent. But with this caveat in mind, I believe the *Gohdes* position is essentially correct.

This interpretation of the phrase "recurring access" is consistent with the declared legislative intent of section 288.5. The Legislature stated in the uncodified portion of the statute enacting section 288.5 that it was its intent "to provide additional protection for children subjected to continuing sexual abuse and certain punishment for persons referred to as '*resident child molesters.*'" (Stats. 1989, ch. 1402, § 1, p. 6138, italics added.) This statement of legislative intent also makes clear that the statute was enacted in reaction to *People v. Van Hoek* (1988) 200 Cal.App.3d 811 [246 Cal.Rptr. 352]. (Stats. 1989, ch. 1402, § 1, p. 6138.) *Van Hoek* held that it was a violation of a defendant's due process rights to convict him based on generic testimony of a course of sexual abuse that did not identify a specific offense, because such testimony impaired the defendant's ability to mount a defense, e.g. to put on an alibi defense or cross-examine the child victim. (*Van Hoek, supra,* 200 Cal.App.3d at pp. 816-817.) Section 288.5 attempted to address these due process concerns by criminalizing a course of conduct, while at the same time, as the statement of legislative intent makes clear, restricting this type of criminal culpability to "resident child molesters"—the group most likely to engage in repeated sexual abuse. (See *People v. Avina* (1993) 14 Cal.App.4th 1303, 1311 [18 Cal.Rptr.2d 511].)

The Legislature in its statement of intent declared that "'resident child molesters' . . . reside with, or have recurring access to, a child and repeatedly molest the child over a prolonged period of time . . . ." (Stats. 1989, ch. 1402, § 1, p. 6138.) In other words, the term "recurring access" was part of the legislative definition of "*resident* child molester." This context strongly indicates that "recurring access" signifies legitimate access that is the functional equivalent to that established by residing with the victim.

The above conclusion is also in accord with our pronouncement in *People v. Grant* (1999) 20 Cal.4th 150, 155 [83 Cal.Rptr.2d 295, 973 P.2d 72] that "[t]he Legislature enacted section 288.5 to remedy certain problems of pleading and proof that had arisen in cases involving child molesters who

engaged in repeated lewd and lascivious acts with their victims *while living with or having close and continuing contact with them.*"[1]

Contrary to the majority's implication, the Attorney General does not take issue with *Gohdes*, as interpreted narrowly. As the Attorney General states: "Insofar as *Gohdes* concluded the Legislature contemplated 'recurring access' required something more than access to commit the forbidden acts, it is consistent both with the Court of Appeal opinion and respondent's position." The Attorney General argues, and the Court of Appeal held, however, that the above is not a technical meaning, and therefore requires no sua sponte instruction. In order to assess the validity of this argument, we must examine more closely the commonly understood meaning of "recurring access."

The definition of "access" quoted by both the Attorney General and majority is "permission, liberty, or ability to enter, approach, communicate with, or pass to and from," or "freedom or ability to obtain or make use of." (Merriam-Webster's Collegiate Dict. (10th ed. 1993) p. 6.) The term "recur" means "to occur again after an interval: occur time after time." (*Id.* at p. 978.) The majority apparently accepts the Attorney General's argument that the term means no more or less than the dictionary definition, and would be understood as such by the jury. But according to that definition, anyone who has committed three or more acts of substantial sexual conduct with a child under the age of 14 has had recurring access to that child, i.e., has had the "ability to . . . approach" a child "time after time." (*Id.* at pp. 6, 978.) A reasonable juror could therefore conclude that such a person has had "recurring access" to the child within the meaning of section 288.5. But as the Attorney General concedes, that conclusion would be erroneous. In other words, nothing in the commonly understood meaning of the term "recurring access" would prevent a reasonable juror from subsuming that term entirely within the "three acts" requirement, thereby abolishing "recurring access" as an independent element of the crime. In order to bridge the gap between the legal meaning of "recurring access" within the context of section 288.5 and the commonly understood meaning, a jury instruction is required. (*People v. Estrada, supra,* 11 Cal.4th at p. 574.)

The majority's response to this position is the cryptic assertion that "not every person who manages to molest a child three times during the requisite period necessarily would have an ongoing ability to approach and contact the

---

[1]The majority refers to various internal memoranda from the Attorney General's Office to demonstrate how broadly the Attorney General conceived the term "recurring access." But there is no indication that these memoranda were presented to the Legislature, and therefore they are not indicative of legislative intent. Moreover, nothing in these memoranda suggests that the term "recurring access" was intended to be redundant.

child time after time." (Maj. opn., *ante,* at p. 550.) Without more, it is impossible to know what the majority has in mind. If someone is able to molest a child three times, then he has had recurring access, i.e., a repeated ability to approach the child—unless perhaps if the encounters occurred wholly by chance. This exception is evidently not what the majority is contemplating, because it explicitly reserves the " 'chance contact with strangers' " issue for another case. (*Ibid.*) As such, the majority's formulation has no evident meaning. Because the majority fails to define "recurring access" so as to avoid redundancy, it also fails to address the central question of whether that term has a technical or commonly understood meaning.

I therefore conclude that the phrase "recurring access" means some kind of repeated legitimate means of access used to perform the sexual misconduct. I further conclude that this understanding of the term gives it a special meaning requiring a sua sponte jury instruction by the trial court, so that the jury is not misled to believe that the commission of three acts alone is sufficient to find "recurring access." I now turn to the question whether the failure to so instruct in this case is prejudicial.

Instructional error that omits an element of a crime is harmless if it appears beyond a reasonable doubt that the error did not contribute to the jury's verdict. (*People v. Flood* (1998) 18 Cal.4th 470, 504 [76 Cal.Rptr.2d 180, 957 P.2d 869].) Instructional error will be found harmless when the evidence before the jury was so overwhelming "as to leave it beyond a reasonable doubt the verdict would have been the same had the jury been instructed" on the missing element. (*People v. Johnson* (1993) 6 Cal.4th 1, 46 [23 Cal.Rptr.2d 593, 859 P.2d 673].) In this case, the evidence is overwhelming, and, indeed, undisputed, that defendant had a legitimate means of access to his two child victims. Defendant lived in a trailer on the same property as Ernesto R. He was allowed to regularly use the bathroom at Ernesto's house. By virtue of his proximity and his standing as a neighborhood soccer coach, he was viewed by Ernesto's mother as an uncle to Ernesto, and was allowed to take Ernesto and his siblings on outings. Defendant lived four houses away from Fernando. He was a soccer coach of Fernando's older brother. Fernando ran errands for defendant and Fernando's mother entrusted defendant to take Fernando and other children to soccer practice and other outings. Thus, the evidence is incontrovertible that defendant had recurring legitimate access to both victims, and the trial court's failure to properly define the term "recurring access" was harmless beyond a reasonable doubt.

I would therefore require courts to issue a sua sponte instruction that "recurring access" for purposes of section 288.5 means that the defendant

had repeated legitimate access to the victim. I would also affirm the judgment of the Court of Appeal because the instructional error in this case was harmless.