Filed 7/28/23  P. v. DeLeon CA1/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br>v.<br>JORGE NICOLLA DELEON,<br><br>       Defendant and Appellant. | A166290<br><br>(San Francisco County<br>Super. Ct. No. SCN229759) |

This is defendant Jorge Nicolla DeLeon's second appeal following his conviction for three sexual offenses against his three step-granddaughters, aged five, six, and 10.  A jury convicted DeLeon for continuous sexual abuse of two of the children (Pen. Code, § 288.5 [counts 1 and 4]) and committing a lewd and lascivious act on the third.[1]  The jury also found true multiple victim enhancements.  The court sentenced DeLeon to two consecutive terms of 25 years to life in prison.

On appeal, DeLeon raised a number of errors, including that his sentence constituted cruel and unusual punishment.  (*People v. DeLeon* (Nov. 21, 2021, A159154) [nonpub. opn.] 2021 WL 5446280 (*DeLeon I*).)  We affirmed DeLeon's convictions but remanded the matter because "the trial court erred in sentencing, wrongly understanding it had no discretion but to

---

[1] All further undesignated statutory references are to the Penal Code.

1

impose the consecutive sentences."  In light of the decision to remand, we did not reach DeLeon's argument concerning whether his original sentence constituted cruel and unusual punishment.  (*DeLeon I*, at p. *20.)  On remand, after noting that consecutive sentences were not required, the trial court imposed the same sentence—an aggregate term of 50 years to life.

DeLeon now renews his argument that his sentence constitutes cruel and unusual punishment under California law—article I, section 17 of the California Constitution—and federal law—under the Eighth Amendment of the United States Constitution.  We disagree with DeLeon and affirm.

## BACKGROUND

### Evidence at Trial

We include a comprehensive summary of the facts relating to the evidence at trial, leading to DeLeon's convictions and sentence, in our previous opinion.  (*DeLeon I*, *supra*, 2021 WL 5446280.)  We reproduce a portion of that summary here, to provide a description of the factual basis for our decision regarding DeLeon's contentions regarding his sentence.

In 2003, when he was 28, DeLeon began a relationship with Cristiana, a 48-year-old woman with seven children and several grandchildren.  DeLeon and Cristiana lived in Christiana's house in San Francisco (the house).  Christina's daughter, Sitti, moved there with her husband Sean and their two children, a son Cristian, born in 2002, and a daughter S.M., born in 2004.  A third child, a daughter, C.M., was born in 2008.  Sitti, Sean, and the girls lived in an "in-law unit" inside the garage, which had a "living room of sorts" with a couch.  Cristian, C.M. and S.M.'s older brother, lived in a separate room in the backyard.

Cristiana's son Andrew also lived in the house, in another upstairs bedroom.  Andrew had a daughter, S.A., who lived with her mother Sheryl F.  S.A. visited the house on weekends.

An April 2017 investigation by Child Protective Services transformed into a sexual abuse investigation concerning DeLeon's conduct.  John Viet led the investigation.  Ultimately, investigators interviewed Sitti's three children, C.M., S.M., and Christian, and Andrew's daughter, S.A.  At the time of trial, C.M. was 10, S.M. was 15, and S.A. was nine years old.

As summarized at length in our earlier opinion, C.M., S.M., and S.A. all described multiple incidents of inappropriate touching by DeLeon, including of their torsos and genitals.  To provide just a few examples of the children's testimony, C.M. remembered that DeLeon "touched her on her arms, legs, "butt," and "private," which she used to "go pee," which occurred when her parents and siblings were downtown, and she remained at the house with her grandmother and defendant." (*DeLeon I*, *supra*, 2021 WL 5446280 at p. *2.) "[S]he 'wanted to say, "Stop," ' but 'was too scared,' thinking defendant 'might get mad, or [her grandma] might think [she] was lying.' " (*Ibid.*)  DeLeon then "flipped over his hands to [her] butt' and moved his hand 'all around.' " (*Ibid.*)

S.M. testified that "when she was about eight years old" DeLeon "started to touch her 'in places where [she] didn't appreciate being touched,' specifically, her 'boobs,' 'butt,' and 'private part,' that . . . she used '[t]o pee.' " (*Ibid.*)  S.M. explained the touching " 'just happened often in the same places.  That's why, it's not something I want to remember, but it's something like . . . that's why I can't say I know I remember the very first time it started happening.  But . . . if anything, all the times it did happen they were mostly the same, because they mainly happened in the same spots.'  As to the

frequency of the touching, S.M. testified, 'It would happen many times. I can't give you an exact number because I [did not] count. I can tell you that, within those years that it happened, it was probably more than 10, probably more than 15, probably more than 20. Because it happened pretty often.' " (*Ibid.*) S.M. specifically described DeLeon standing "next to her, in back of her so that the others could not see. S.M. felt defendant put his hand in her pants and touch her 'butt' inside her underwear with his bare hand for 'probably less than a minute,' and then squeeze her 'butt.' When [DeLeon] took his hand out, S.M.'s pants 'smack[ed]' or 'snap[ped]' against her back." (*Id.* at p. *3.) S.M. testified about another incident in which DeLeon "stood behind S.M. and rubbed 'his private part' against her 'butt' and breathed on S.M.'s neck and kissed it. Christian looked up and [DeLeon] 'backed away,' saying 'Oh, what are [you] doing on your phone?' In her view acting as if 'he was interested in what [she] was doing, to play it off like he wasn't just doing the things he was doing.' " (*Ibid.*)

S.A. similarly testified she had stopped visiting her grandmother's house on the weekends because " 'something had happened' in [DeLeon's] room—he 'touched [her] private part,' the part she used 'to pee.' S.A. said [DeLeon] told her not to tell anybody about the touching, and she complied because she 'was scared [she] was going to get in trouble' with her mother and [DeLeon]." (*DeLeon I*, *supra*, 2021 WL 5446280 at p. *4.)

The children testified concerning other graphic examples, as summarized in our earlier opinion. (*DeLeon I*, *supra*, 2021 WL 5446280 at pp. *2–*4.) Christian corroborated incidents relating to his sisters, C.M. and S.M. Based on witness testimony, the incidents recurred as to each step granddaughter over a period of months or years.

4

In his defense, DeLeon testified for some four hours. He described various incidents in which he suffered abuse in his childhood, beginning when he was age five. He described difficulties interacting with Christina's family, including "confrontations" where "sometimes they call[ed] the police." He said he tried his best to fulfill his role as a step-grandparent, testifying he especially cherished the gatherings in what he called the upstairs kitchen room.

DeLeon admitted to having occasional physical contact with the children, such as bouncing them on his knee, but denied anything sexual took place. DeLeon reported that while he did not babysit either S.M. or C.M., and "seldom" went to the garage room with the television, he did often see the children at the home, especially upstairs with Cristiana present. DeLeon generally denied any contact with the children for sexual arousal. Rather, he testified he had a good relationship with C.M. and S.M., and that he "tried to get close to them" and "to get along with them." He blamed difficulties in his relationship with them on Sitti.

**Remand and Resentencing**

On remand, both parties submitted revised sentencing memoranda, which the trial court reviewed prior to the August 17, 2022 resentencing hearing. At the beginning of the hearing, the trial court issued a tentative ruling, imposing an indeterminate term of 50 years to life as to counts 1 and 4. The trial court noted that consecutive sentencing was not mandatory, which had not been discussed on the record at the original sentencing hearing. The trial court expressed its intent to exercise its discretion based on its "review of all of the factors . . . namely, that there were multiple victims, that all three victims were under the age of 14 and that the crime in Counts 1 and 4 occurred over a period of years to impose full separate and

5

consecutive sentences for the defendant's conviction for violation of Penal Code section 288.5 in Counts 1 and 4."

Before hearing argument, the trial court advised counsel that it had carefully considered the cruel and unusual punishment issues raised. The court explained: "Before I hear argument from counsel, I would like to note I carefully considered defense counsel's argument that the imposition of consecutive sentences on Counts 1 and 4 constitutes cruel and unusual punishment in violation of the Eighth Amendment of the U.S. Constitution and Article 1 section 17 of the California Constitution. [¶] Counsel argued that Mr. DeLeon's conduct was substantially less serious and is often seen in cases of child molestation. There was no oral copulation neither vaginal nor anal penetration and Mr. DeLeon never asked or forced any of the girls to touch him. [¶] Counsel also correctly notes that the sentence for oral copulation with or sexual penetration of a minor under the age of ten years is 15 years to life and that sexual penetration even if accomplished by force, violence, duress, menace or fear against a minor under the age of 14 years is punishable by eight, ten, or twelve years in prison. None of that conduct occurred in this case. And the defendant will receive a longer sentence than mandated for these crimes. [¶] Although I would agree there is an inference of disproportionality when comparing the mandatory sentence in this case to the sentence required for the other offenses referenced above, I do not believe the mandated sentence rises to the level of violating the provisions of the U.S. or California Constitution. [¶] I am required to follow the sentencing laws as enacted by the legislature and to the extent that defense believes some of these laws need to be amended or updated, I would encourage him to present his arguments to the legislature."

DeLeon now appeals a second time.

6

## DISCUSSION

### A.     Standard of Review and Applicable Law

The trial court re-sentenced DeLeon to two consecutive terms under section 667.61, commonly known as the "One Strike" law, which is an alternative sentencing scheme that applies to specified felony sex offenses. (*People v. Reyes* (2016) 246 Cal.App.4th 62, 79 (*Reyes*).)  DeLeon does not challenge the One Strike law as unconstitutional on its face.  Instead, he contends that "as applied" to this case, his 50-years-to-life sentence for counts 1 and 4 was "disproportionate to the actual conduct and thus offends both state and federal provisions against cruel and unusual punishment."

#### 1.  *"As Applied" Constitutional Challenges*

"Unlike a 'facial challenge,' an 'as applied' challenge may seek 'relief from a specific application of a facially valid statute or ordinance to an individual or class of individuals who are under allegedly impermissible present restraint or disability as a result of the manner or circumstances in which the statute or ordinance has been applied[.]' " (*People v. D.L.* (July 3, 2023, A164432) __ Cal.App.5th __ [2023 WL 4342391, p. *7], quoting *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084.)  "An 'as applied' challenge 'contemplates analysis of the facts of a particular case or cases to determine the circumstances in which the statute or ordinance has been applied and to consider whether in those particular circumstances the application deprived the individual to whom it was applied of a protected right.' (*Ibid*.)  'When a criminal defendant claims that a facially valid statute or ordinance has been applied in a constitutionally impermissible manner to the defendant, the court evaluates the propriety of the application on a case-by-case basis to determine whether to relieve the defendant of the sanction.' (*Ibid.,* citing *Hale v. Morgan* (1978) 22 Cal.3d 388, 404.)" (*D.L.*, at p. *7.)

7

2. *Federal and State Constitutional Standards Regarding Punishment*

" 'The Eighth Amendment to the United States Constitution applies to the states. [Citation.] It prohibits the infliction of "cruel *and* unusual" punishment. (U.S. Const., 8th Amend., italics added.) Article I, section 17 of the California Constitution prohibits infliction of "[c]ruel *or* unusual" punishment. (Italics added.)' " "A punishment is cruel or unusual in violation of the California Constitution 'if, although not cruel or unusual in its method, it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.' [Citation.] Because it is the Legislature's function to define crimes and prescribe punishments, the judiciary should not interfere 'unless a statute prescribes a penalty "out of all proportion to the offense." ' " (*People v. Baker* (2018) 20 Cal.App.5th 711, 723 (*Baker*).)

Review of a state law claim of excessive punishment involves "(1) an examination of the nature of the offense and the offender, with particular attention to the degree of danger both pose to society; (2) a comparison of the punishment with the punishment California imposes for more serious offenses; and (3) a comparison of the punishment with that prescribed in other jurisdictions for the same offense." (*In re Palmer* (2021) 10 Cal.5th 959, 973.)

"In our tripartite system of government, the legislative branch defines crimes and prescribes punishment. [Citation.] It is therefore the rare case where a court could declare the length of a sentence mandated by the Legislature unconstitutionally excessive. [Citation.] Even so, it is the judiciary's responsibility to condemn any punishment that is cruel or unusual. [Citation.] We independently review whether a punishment is cruel or unusual, considering any underlying disputed facts in the light most

8

favorable to the judgment." (*People v. Avila* (2020) 57 Cal.App.5th 1134, 1145–1146.)

**B.    Analysis**

1.    *The "One Strike" Law*

The One Strike law is intended " ' "to ensure serious and dangerous sex offenders would receive lengthy prison sentences upon their first conviction," "where the nature or method of the sex offense 'place[d] the victim in a position of *elevated vulnerability*.' " ' [Citation.]" (*Reyes*, *supra*, 246 Cal.App.4th at p. 79.) "According to a general statement of purpose in the legislative history, the targeted group preys on women and children, cannot be cured of its aberrant impulses, and must be separated from society to prevent reoffense. [Citation.]" (*People v. Wutzke* (2002) 28 Cal.4th 923, 929–930.)

The One Strike law applies to the crime of continuous sexual abuse of a child under the age of 14. (§§ 288.5, 667.61, subd. (b)(9). The jury convicted DeLeon on two counts—one against C.M. and one against S.M. The jury found true the aggravating factors that DeLeon committed one of those crimes against more than one victim, and the victims were under the age of 14. The trial court therefore applied the One Strike law and imposed an indeterminate sentence of 25 years to life on each count. (See § 667.61, subds. (e)(4), (j)(2), (o); see also *People v. Alvarado* (2001) 87 Cal.App.4th 178, 186 ["Section 667.61 mandates indeterminate sentences of . . . 25 years to life for specified sex offenses that are committed under one or more 'aggravating circumstances,' such as when the perpetrator . . . sexually victimizes more than one person"].)

In DeLeon's original appeal, we remanded the case for resentencing because "the trial court 'incorrectly believed that consecutive sentencing,"

9

rather than imposing concurrent sentences, "was mandatory." (*DeLeon I*, *supra*, 2021 WL 5446280 at p. *20.)  On remand, the trial court confirmed it understood that imposing a consecutive sentence was discretionary here, and then re-imposed the two consecutive sentences, for an aggregate sentence of 50 years to life.  We therefore turn to DeLeon's arguments that the One Strike law is unconstitutional as applied to him here.

      2.      *Article I, Section 17 of the California Constitution*

      a.      <u>Nature of the Offense and of the Offender</u>

We begin our discussion with the three-pronged analysis required by our state Constitution, whose protections exceed the federal standard.  " 'A look at the nature of the offense includes a look at the totality of the circumstances, including motive, the way the crime was committed, the extent of the defendant's involvement, and the consequences of defendant's acts.  A look at the nature of the offender includes an inquiry into whether "the punishment is grossly disproportionate to the defendant's individual culpability as shown by such factors as his age, prior criminality, personal characteristics, and state of mind." ' " (*Reyes*, *supra*, 246 Cal.App.4th at p. 87.)

Based on the record at trial in this case, the considerations described in *Reyes* do not indicate a grossly disproportionate punishment.  DeLeon was an adult in his late 30's when he repeatedly molested his wife's young granddaughters over a period of years, starting when they were 10 and 6 years old and living in DeLeon's home.  The "sexual abuse of children plainly is a grave and serious crime and few crimes . . . are more despicable because of the life-long consequences to the victims."  (See *People v. Christensen* (2014) 229 Cal.App.4th 781, 806 [lewd conduct on a child "may have lifelong consequences to the well-being of the child"]; *Baker*, *supra*, 20 Cal.App.5th at

p. 724  [" 'There exists a strong public policy to protect children of tender years' "].)

DeLeon attempts to rely on *In re Rodriguez* (1975) 14 Cal.3d 639 (superseded by statute as explained in *In re Palmer*, *supra*, 10 Cal.5th at p. 975), but that case presented a very different set of facts.  By the time the defendant in *Rodriguez* filed his habeas corpus petition, he had already served 22 years in prison based on an indeterminate sentence of one-year to life on a single count of lewd conduct.  The court found that 22 years of imprisonment was disproportionate to the petitioner's conduct because only a single incident of lewd conduct was involved, which "caused no physical harm to the victim" and "lasted only a few minutes."  The petitioner "was only 26 years old at the time of the offense," and his "conduct was explained in part by his limited intelligence" (with an IQ of 68), "his frustrations brought on by intellectual and sexual inadequacy, and his inability to cope with these problems." (*Rodriguez*, at pp. 653–655.)

DeLeon presents a stark contrast.  DeLeon was a trusted family member and caretaker for the victims he molested—his wife's granddaughters, who lived under the same roof.  DeLeon was well past age 26 when he committed his crimes.  The record lacks evidence that he had any cognitive deficits that were somehow connected to his crimes.

Any sexual abuse of a child in isolation is a serious offense. Cumulatively, DeLeon's offenses were a grave violation of trust.  DeLeon's multiple acts of molestation of multiple children are also more aggravated than the single incident in *Rodriguez*, and DeLeon's conduct occurred over an extended period of time.  (See *Baker*, *supra*, 20 Cal.App.5th at pp. 715, 727 [15 years to life sentence for single count of oral copulation of six year old was not cruel or unusual; the nature of the offense was significantly more

11

aggravated than the offense in *Rodriguez*].) The jury convicted DeLeon of two acts of continuous sexual abuse of two young children under the age of 14. As our Supreme Court has recognized, persons convicted of sex crimes against multiple victims under the One Strike law " 'are among the most dangerous' from a legislative standpoint." (*People v. Wutzke, supra*, 28 Cal.4th at pp. 930–931; see also *People v. Estrada* (1997) 57 Cal.App.4th 1270, 1282 ["The penalty for a single offense cannot be properly compared to the penalty for multiple offenses"].)

The trial court imposed a very severe sentence, but the record reflects that the court reflected on that fact in deciding to impose it. While there appears to have been no lasting physical harm to the children, continuous sexual abuse does not require such harm. (See § 288.5.) The offense "provide[s] 'additional protection' for victims of child molestation by assuring that 'resident' child molesters and others who repeatedly abuse a child over a prolonged period of time would not escape prosecution because of difficulties in pleading and proving with sufficient precision the dates, times, and particular nature of each molestation." (*People v. Rodriguez* (2002) 28 Cal.4th 543, 549.) Section 288.5 defines a criminal offense that is related to but different from pre-existing crimes concerning sexual abuse of minors and imposes a range of appropriate potential sentences (6, 12, or 16 years).[2] (*People v. Alvarez* (2002) 100 Cal.App.4th 1170, 1177.)

---

[2] For the first time in his reply brief, DeLeon suggests that because "recurring access" is an element of section 288.5, any justification for increased punishment based on the multi-year span of his offenses would have been an impermissible dual use of the facts. Of course, it is an established rule of review that appellate courts do not ordinarily consider issues raised for the first time in a reply brief. (*American Indian Model Schools v. Oakland Unified School Dist.* (2014) 227 Cal.App.4th 258, 275–276.) In any event, DeLeon's suggestion is without merit. DeLeon received

DeLeon's argument that there was no evidence he used force to abuse his wife's young granddaughters is similarly without merit. Preying upon children in their own home is an insidious form of abuse. "[C]hildren are 'uniquely susceptible' to such abuse as a result of their dependence upon adults, smaller size, and relative naiveté. [Citation.] . . . [A]lso . . . young victims suffer profound harm whenever they are perceived and used as objects of sexual desire. [Citation.]" (*People v. Martinez* (1995) 11 Cal.4th 434, 443–444.) Tragically, DeLeon's conduct was apparently undeterred even by the presence of other family members living in the same house. The fact that continuous sexual abuse is listed among other One Strike offenses that do require an element of force is consistent with the legislative purpose of imposing significant penalties against resident child molesters.

Here, C.M. "feared" that DeLeon "might get mad" if she told him to stop inappropriately touching her. S.M. tried to "black out" the abuse and did not want to tell anyone about it; she was afraid that something might happen to her or other members of her family. Again, DeLeon was a trusted family member and lived in the same home in which the young victims lived. The victims' fear, reflected in the record, was heightened by their vulnerability.

b.     Punishments for More Serious Offenses in California

In order to argue that his sentence is out of proportion to his crimes, DeLeon compares his mostly over-the-clothes touching against C.M. and S.M. (though he acknowledges that "one instance was described as having his hand inside C.M.'s pajamas") with offenses involving "more serious" crimes, such as assault with intent to commit rape, pimping or pandering for

increased punishment not because of a dual use of the same facts but rather based on the legislative determination that multiple acts of sexual molestation against multiple children described in section 288.5 require such punishment.

prostitution, or crimes involving sexual penetration or sodomy, which may have shorter terms. Courts rejected similar arguments in *Baker, supra,* 20 Cal.App.5th at pages 727–729, and *Reyes, supra,* 246 Cal.App.4th at pages 88–89. " 'Punishment is not cruel or unusual merely because the Legislature may have chosen to permit a lesser punishment for another crime. Leniency as to one charge does not transform a reasonable punishment into one that is cruel or unusual.' " (*Baker,* at p. 727.) "[T]he punishment under the One Strike law 'is precisely tailored to fit crimes bearing certain clearly defined characteristics.' " (*Reyes,* at p. 89 [upholding sentence of life without the possibility of parole for forcible oral copulation and forcible rape during the commission of a burglary under the One Strike law].)

Given DeLeon's position of trust relative to his wife's granddaughters, and the duration and extent of his misconduct, this is just not one of the "rarest of cases" where the sentence mandated by statute is unconstitutionally excessive. (*People v. Martinez* (1999) 76 Cal.App.4th 489, 494; see *Baker, supra,* 20 Cal.App.5th at p. 730 ["A comparison of the mandatory 15-year-to-life sentence under section 288.7, subdivision (b) to the punishments for similar and more serious sex offenses in California does not suggest this is that 'rarest of cases' in which 'the length of a sentence mandated by the Legislature is unconstitutionally excessive' "].)

c.  <u>Punishment for Similar Offenses in Other States</u>

Finally, DeLeon's comparison of his sentence to sentences available in other states is likewise unavailing. DeLeon argues that his sentence is cruel or unusual because, of the seven states that have "continuous abuse statutes," only California and two other states have "a mandatory

14

enhancement elevating a determinate term to a life sentence based on there being multiple victims."[3]

The fact that not every state has a punishment framework to address offenders who target more than one child victim over a period of time does not compel the conclusion that it is unconstitutionally cruel or unusual. (*People v. Martinez* (1999) 71 Cal.App.4th 1502, 1516.)  California's constitutional proscription against cruel or unusual punishment "does not require California to march in lockstep with other states in fashioning a penal code.  It does not require 'conforming our Penal Code to the "majority rule" or the least common denominator of penalties nationwide.' " (*Ibid.*) Only "when there appears a significant disproportion between a challenged penalty and that imposed for the same crime by our sister states" should the penalty be deemed suspect.  (*People v. Wingo* (1975) 14 Cal.3d 169, 179.) DeLeon has not satisfied his burden to show that his sentence under the One Strike law is excessive in comparison to the same offense in other jurisdictions.  In sum, we reject DeLeon's contentions that his sentence constitutes cruel or unusual punishment in violation of the California Constitution.

3. *The Eighth Amendment*

DeLeon has not established his sentence constitutes cruel and unusual punishment under the Eighth Amendment either.  As the court explained in *Baker, supra,* 20 Cal.App.5th at page 733, we "begin an Eighth Amendment analysis 'by comparing the gravity of the offense and the severity of the sentence.' [Citation.]  'This analysis can consider a particular offender's

---

[3] DeLeon identifies seven states as having "continuing abuse" statutes: Arizona, Delaware, Hawaii, Maryland, North Dakota, Tennessee, and Texas. He identifies Texas and North Dakota as the other two states with a multiple victims enhancement.

mental state and motive in committing the crime, the actual harm caused to his victim or to society by his conduct, and any prior criminal history.' [Citation.] Only in the rare case in which this threshold comparison leads to an ' "inference of gross disproportionality' " do we proceed to 'compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions.' "

For the reasons explained above, a comparison of the relevant factors in this case does not lead to "an inference of gross disproportionality." DeLeon engaged in multiple sexual offenses against multiple, young, vulnerable victims, abusing his position of trust to do so. DeLeon has not shown that his sentence violates the Eighth Amendment.

## DISPOSITION

The judgment is affirmed.

_____<br>Markman, J.*

We concur:


_____<br>
Stewart, P.J.


_____<br>
Miller, J.

*People v. DeLeon* (A166290)

* Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.